BINGHAM COUNTY v. FIRST NAT. BANK OF OGDEN, UTAH.

(Circuit Court of Appeals, Ninth Circuit.　March 9, 1903.)

No. 889.

**1. COUNTY WARRANTS—VALIDITY—STATUTORY REQUISITES.**

The statutes of Idaho vest boards of county commissioners with power to examine, settle, and allow all accounts legally chargeable against the county, and order warrants to be drawn therefor, and expressly declare that all such warrants "must distinctly specify the liability for which they are drawn and when it accrued." *Held*, that such requirement was mandatory, and that warrants which failed to specify when the claim accrued were void, and would not support an action against the county.

**2. SAME—RATIFICATION OF VOID WARRANTS.**

County warrants which are void on their face because of the omission of recitals made essential by the statute cannot be validated by any act of ratification by the county board.

In Error to the Circuit Court of the United States for the District of Idaho.

James M. Stevens and F. S. Dietrich, for plaintiff in error.

David Evans and A. G. Horn, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.　The defendant in error was the plaintiff in the court below in an action against Bingham county, a municipal corporation of the state of Idaho, to recover a money judgment for the principal and interest alleged to be due on certain warrants theretofore drawn on the general fund of the county, and of which the plaintiff alleged it was the owner. The complaint, as amended, set out the number, date, and amount of each of the warrants sued on, to whom issued, on what fund drawn, the date each was presented to the treasurer of the county for payment, and the fact and date of the treasurer's refusal of payment. The complaint contains no allegation concerning the basis of any of the warrants; it being based solely upon the alleged ownership by the plaintiff, at the time of the commencement of the action, of each of the warrants, upon which it is alleged there is due, in the aggregate, the principal sum of $7,238.09, with interest at the rate of 7 per cent. per annum from the date of their respective presentations. The amended complaint contains the further allegations:

"That since the 1st day of August, 1899, there has been ample money in the county treasury of the defendant, and in the county general fund, to pay plaintiff's said warrants, and that the same has been applied in payment of warrants of a later date and registration than the warrants of the plaintiff herein set out. Also that ample time has elapsed since the issuance of said warrants to raise money by legal and proper methods to fully pay and discharge said warrants, but that said defendant wrongfully refuses to pay said warrants, and has heretofore, by a resolution of its board of county commissioners, directed the treasurer of said defendant to refuse payment of any of said warrants when presented for payment; and, on information and belief, plaintiff alleges that said warrants, between the 1st day of August, 1899, and January 10, 1901, were or should have been duly called for payment, pursuant to law, by said treasurer of said county, and that on January 10, 1901, said warrants were presented for payment to said treasurer, and payment was then and there refused by him."

A demurrer to the complaint as amended having been overruled by the court below, the defendant county filed an answer, in which it admitted that, within the period stated in the complaint—

"Its auditor delivered to the various persons named in said third paragraph [of the complaint], as payees, what, upon the printed forms, were designated as county warrants; that said printed forms were and are substantially as follows, to wit:

" 'County Warrant.

" 'No. ———.                         Blackfoot, Idaho, 189–.

" 'The Treasurer of Bingham County, Idaho, will pay ——— ———, or bearer, ——— dollars, for ———, and charge to account of county general fund.

" '$———.                                ———,
" 'Auditor.'

"That prior to the delivery to the said payees the said printed forms were signed by defendant's auditor, numbered and dated substantially as alleged in said amended complaint, and the names of payees and the amounts were entered substantially as alleged."

The answer denies that either of the warrants so issued was delivered in accordance with law, or that there is anything due from the defendant on any of them, and alleges that not one of them specifies or in any manner indicates when the liability for which it was drawn accrued, nor does any one of them recite that it was issued for value received, and that "most of them insufficiently specify the liability for which they were drawn," and that—

"No one of the so-called warrants No. 487, dated July 13, 1893, No. 491, dated July 13, 1893, No. 55, dated January 12, 1894, No. 70, dated January 12, 1894, and No. 86, dated January 20, 1896, was issued for a claim or demand which was chargeable against defendant, or which was ever legally examined, allowed, or ordered paid by defendant's board of commissioners; that no one of the so-called warrants No. 491, dated July 13, 1893, No. 61, dated January 19, 1895, and No. 41, dated January 20, 1896, was issued for a claim which was ever legally examined, allowed, or ordered paid by defendant's board of commissioners, or for which an account properly made out, or verified in any manner, was ever presented to said board."

The answer denies that any of the warrants sued on could have been legally paid by the defendant, or that any money could have been legally raised for their payment. And for a separate defense the defendant alleges that, at all the times mentioned in the amended complaint and in the defendant's answer thereto, the banking firm of C. Bunting & Co., the payee of certain of the warrants sued on, was a corporation doing a general banking business in the town of Blackfoot, in the defendant county, and transacted business at no other place; that on or about the 15th day of February, 1897, in an action then pending in the district court of the Fifth Judicial District of Idaho, in and for Bingham county, wherein the First National Bank of Pocatello was plaintiff, and Bunting & Co. defendant, one Thum was duly appointed receiver of the defendant company, and immediately qualified as such, and entered upon the discharge of his duties, and ever since has remained the receiver of that company; that at the time of such appointment the firm of Bunting & Co. was wholly insolvent, and has remained so ever since; that those of the warrants sued on numbered, respectively, 45, 522, 544, 3, 9, 25,

32, 41, 61, 62, 63, 28, 34, 35, 42, 44, 200, and 202, were originally delivered to Bunting & Co., and were its property, and that all of the others of the warrants sued on were transferred and delivered to that company soon after their several dates of issue; that for more than a year immediately preceding the appointment of the receiver mentioned, and at the time of such appointment, and for a long time thereafter, Bunting & Co. was the owner of all of the warrants sued on, and of any indebtedness evidenced thereby, and that neither Bunting & Co. nor the receiver ever voluntarily parted with the title thereto, and that such title was never divested at all until after the 1st day of July, 1897, and then only by process of law; that at all of the said times the firm of Bunting & Co. was indebted to the defendant county in an amount of money in excess of the aggregate amount of the face value, including interest, of the warrants sued on, which indebtedness from Bunting & Co. at the time of the appointment of the receiver exceeded $40,000, and has ever since been in excess of $20,000; that the said indebtedness arose by reason of the deposit with Bunting & Co. by the sheriff, treasurer, and tax collector of the defendant county, from time to time, of moneys of the defendant, upon the agreement by that firm to pay over the same to the defendant at any time upon demand; that Bunting & Co. failed and refused to pay over the moneys so deposited, although frequently requested so to do, but, on the contrary, commingled the defendant's moneys so received with its own funds and general deposits, and appropriated the same to its own use, but at all times acknowledged its indebtedness to the defendant county, and the amount thereof; that said indebtedness of Bunting & Co. to the defendant county has at all times—

"Been a definite, mature, liquidated, and unsecured demand in favor of this defendant and against said C. Bunting & Co., the owner of said so-called warrants, and has at all times existed under such circumstances that if the said C. Bunting & Co. or its receiver had at any time brought an action against this defendant upon any or all of said alleged warrants, or the alleged indebtedness evidenced thereby, this defendant could have set up as a counterclaim against said demand its said claim or demand against said C. Bunting & Co., and this defendant could have thus fully compensated and set off said and the whole of said alleged indebtedness evidenced by said so-called warrants."

The case was tried by the court without a jury, on an agreed statement of facts, upon which the court made findings of fact, and from which it drew the conclusion that all of the warrants substantially complied with the laws of Idaho; that the plaintiff was the owner and holder of each of them; that all of them, except the three numbered, respectively, 55, 70, and 86, were valid, subsisting obligations of the defendant county, to which there was no valid defense, set-off, or "compensation," and on which there was due the plaintiff the aggregate principal sum of $7,060.96, with interest. Judgment for the plaintiff followed.

The second and third findings of fact are as follows:

"That between July 13, 1893, and April 25, 1896, said defendant, pursuant to law, made, executed, and delivered its warrants, directed to its treasurer, requesting him to pay to the parties designated in said warrants, or bearer,

for value received by said county from such person or persons, the respect-. ive sums of money therein set out, which said warrants designated upon their face for what they were issued, and to what account the same should be charged; but none of said warrants recites or in any manner specifies when the liability for which it is drawn was incurred or accrued. That a correct list of said warrants, according to number, date, of issue, to whom payable, with the amounts thereof, together with the date when the same was presented to the county treasurer and payment refused for the reason that there were no funds on hand to pay the same, is fully set out and contained in the amended complaint on file herein, excepting therefrom the three warrants hereinafter specified and, found to be illegal. That each of said warrants have indorsed upon the back thereof the date of presentation and refusal of the treasurer to pay the same for want of funds.

"That immediately prior to the commencement of this suit there was ample money in the county general fund to pay said warrants, but said moneys were applied in payment of warrants of a later date and registration than the plaintiff's warrants, and said defendant, prior to the bringing of this action, by a resolution of its board of county commissioners, directed the treasurer of said defendant county to refuse payment of any of said warrants when presented for payment, and said warrants were on January 10, 1901, presented to said treasurer for payment, which was by him then and there refused."

The court found that the warrants numbered, respectively, 554, 41, 62, 63, 34, and 202, and the claims represented thereby, were originally the property of C. Bunting & Co., and that those warrants were originally transferred to that firm, and that all of the other warrants sued on were transferred to it soon after their issue. It was found by the court below that warrants No. 55, for $25, issued to D. D. Wright for legal services, No. 70, for $49.95, issued to H. W. Kiefer for commissions as collector, and a portion of warrant No. 86, amounting to $102.18, issued to S. G. Crowley, were issued in payment of claims which were not a legal charge against the defendant county, and are void, and that warrants No. 61, for $62.60, in favor of Bunting & Co., and No. 41, for $70.40, in favor of the superintendent of the insane asylum, "were issued upon statements or claims not verified by any persons, but otherwise in regular form, and acted upon and allowed by the board of commissioners in regular manner." The court below further found that on the 15th day of February, 1897, the firm of Bunting & Co. was insolvent, and that on or about that day, in an action then pending in the district court of the Fifth Judicial District of Idaho, in and for the county of Bingham, wherein the First National Bank of Pocatello was plaintiff, and Bunting & Co. defendant, one C. E. Thum was duly appointed general receiver of Bunting & Co., and immediately qualified as such receiver, and entered upon the discharge of his duties as such, and has so remained ever since; that on or about December 1, 1896, Bunting & Co. assigned and delivered all of the warrants mentioned to the Chase National Bank of New York as collateral security for a loan made by that bank to Bunting & Co.; that on or about February 24, 1897, all of the said warrants, then being in the possession of the Chase National Bank, were attached in the state of New York at the suit of the American Exchange National Bank of New York against Bunting & Co. upon an assigned claim to it made by Bunting & Co.; that under and by virtue of an execution sale made on the 16th day of July, 1897, upon a judgment entered

in that action, the plaintiff in the court below, the First National Bank of Ogden, Utah, acquired the title of Bunting & Co. to all of the warrants mentioned, and ever since then has had the possession of the warrants.

The ninth finding of the court below is as follows:

"That at a meeting of the board of county commissioners of said defendant held during the month of April, 1898, and after said defendant had notice of the plaintiff's claim of ownership and possession of said warrants, said defendant, through its board of county commissioners, then and there at a regular meeting of said board passed the following resolution, and caused the same to be spread upon their minutes, which said resolution is in words and figures following:

## "'In the Matter of Outstanding County Warrants.

"'It appearing to the board that divers persons are the owners and holders of general fund warrants of various numbers, .dates, and denominations, which have been presented for payment, and marked 'Not paid for want of funds,' and that there have been and are no funds with which to pay said warrants, and each of them, and that they are valid obligations: Wherefore Bingham county does hereby acknowledge to all of said warrant holders, and each of them, that said warrants are its valid and subsisting obligations, and promises to pay the same in due course.'

"That said resolution was duly entered in the minute book of the proceedings of the board of county commissioners, and signed by the said board, and was passed to avert threatened suits upon said warrants, as well as other warrants of said county of the amount of about $50,000."

The court below further found that between the 1st day of December, 1896,. and the 15th day of February, 1897, the tax collectors, treasurers, and sheriff of the defendant county deposited in their own names in the bank of Bunting & Co. at Blackfoot, Idaho, large sums of the defendant county's money theretofore collected by those officers, aggregating $44,340.95, and which Bunting & Co. knew at the time of such deposits was the money of the defendant county; that thereafter each of the officers mentioned, having presented his claim in the course of the administration of the insolvent bank's affairs, received from the receiver thereof dividends aggregating 20 per cent. of their respective deposits; that subsequently the defendant county filed a petition in the action in which the receiver of Bunting & Co. was appointed and acting, against the receiver, in which—

"After due proceedings, judgments were entered upon said deposit accounts of treasurer, collector, and sheriff, after deducting the dividends paid as hereinbefore found, in favor of said Bingham county, and against said receiver and said C. Bunting & Co., Bankers, amounting to $36,974.12, the same being ·adjudged to be a trust fund, and ordered paid out of any assets in the hands of said receiver prior to the claim of any creditor, which judgment was declared to be a first lien upon any assets in the hands of said receiver, except any other judgment that might be entered for the recovery of a trust fund in the hands of said receiver; that said proceeding was commenced December 19, 1898, and said judgment was entered November 9, 1899; that there has been. paid to the defendant county, on account of said judgment of $36,974.12, $17,757.11, and the balance of said judgment is still due said county."

It is contended on. behalf of the plaintiff in error, first, that, by reason of the laws of Idaho, an action to recover a money judgment on county warrants cannot be maintained; second, that all of the warrants sued on are void, for the reason that not one of them

states when the liability for which it was issued accrued; and, third, that the entire indebtedness, if any, represented by the warrants, is more than "compensated" by the indebtedness to the defendant county of Bunting & Co., from whom the plaintiff below obtained the warrants.

Since the complaint counts only on the warrants, if, as is contended on behalf of the plaintiff in error, they are void upon their face, in failing to state matter made essential by the state statute, it will not be necessary to consider or determine either of the other points made. It may be and is readily conceded that, if the omitted matter is mere matter of form, its omission is of no consequence.

It is provided by the state of Idaho, in section 1759 of its Revised Statutes of 1887, that the boards of commissioners in their respective counties shall have jurisdiction and power, under such limitations and restrictions as are prescribed by law:

"(1) To supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county charged with assessing, collecting, safe keeping, management, or disbursement of the public moneys and revenues; see that they faithfully perform their duties; direct prosecution for delinquencies; approve the official bonds of county and precinct officers, and when necessary, require them to renew their official bonds, to make reports, and to present their books and accounts for inspection; * * * (10) to examine, settle and allow all accounts legally chargeable against the county, and order warrants to be drawn on the county treasurer therefor, and provide for the issuing of the same."

Section 1766 provides:

"The board must require their clerk at the close of every session to furnish them with a list of all bills and accounts of every nature, approved by them at said session, giving the name of each person in whose favor an account or bill of any kind or nature has been allowed, with the amount allowed him and out of what fund the same is to be paid. They must compare their list with the record of their proceedings, and if not found correct, make it so and certify to said list and file it with the county treasurer, and the treasurer must pay no warrant drawn on any fund in the county treasury that does not correspond with the files furnished him by the board."

By section 1780 it is provided:

"A claimant dissatisfied with the rejection of his claim or demand, or with the amount allowed him on his account, may sue the county therefor at any time within six months after the final action of the board, but not afterward; and if in such action judgment is recovered for more than the board allowed, on presentation of the judgment the board must allow and pay the same, together with the costs adjudged; but if no more is recovered than the board allowed, the board must pay the claimant no more than was originally allowed."

The next section is as follows:

"Warrants drawn by order of the commissioners on the county treasury for the current expenses during each year, must specify the liability for which they are drawn, and when they accrued, and must be paid in the order of presentation to the treasurer. If the fund is insufficient to pay any warrant, it must be registered, and thereafter paid in the order of its registration."

Sections 2005, 2006, and 2009 are as follows:

"Sec. 2005. The auditor must draw warrants on the county treasurer in favor of all persons entitled thereto, in payment of all claims and demands

chargeable against the county which have been legally examined, allowed, and ordered paid by the board of commissioners; also, for all debts and demands against the county when the amounts are fixed by law, and which are not directed to be audited by some other person or tribunal.

"Sec. 2006. All warrants must distinctly specify the liability for which they are drawn, and when it accrued."

"Sec. 2009. All warrants issued by the auditor during each year commencing with the first Monday in January must be numbered consecutively, and the number, date, and amount of each, and the name of the person to whom payable, and the purpose for which drawn, must be stated thereon, and they must at the time they are issued be registered by him."

And by section 1840 the county treasurer is required to, among other things, "disburse the county moneys only on county warrants issued by the county auditor; based on orders of the board of commissioners, or as otherwise provided by law."

Sections 4050 to 4056, inclusive, prescribe the periods for the commencement of actions other than for the recovery of real property; and by section 4057 it is provided that "actions on claims against a county which have been rejected by the board of commissioners, must be commenced within six months after the first rejection thereof by such board."

It is thus seen that the state of Idaho has ·by statute conferred upon the board of commissioners of the county the power to, among other things, examine, settle, and allow all accounts legally chargeable against the county, and order warrants to be drawn on the county treasurer therefor, and has expressly declared that all such warrants "must distinctly specify the liability for which they are drawn, and when it accrued." Is any court justified in treating such language as merely directory? We think not. It is well settled that, if the statute under which a municipal corporation is organized and acts prescribes a particular mode in which the property of the corporation shall be disposed of, that mode must be pursued. Dillon on Municipal Corporations (4th Ed.) §§ 463, 578, and 563. The state of Idaho, as has been seen, authorized the board of commissioners of the defendant county to allow only legal claims against it, within which claims barred by its statute of limitations would not come. Carroll v. Siebenthaler, 37 Cal. 193. And it has been held that, even though the governing board of a county should allow illegal claims, it is the duty of the auditor to refuse to draw warrants therefor, and, if warrants are drawn, it is the duty of the treasurer to refuse to pay them. Linden v. Case, 46 Cal. 171; Merriam v. Board of Supervisors of Yuba County (Cal.) 14 Pac. 137; Trinity County v. McCammon, 25 Cal. 121.

In McCormick v. Bay City, 23 Mich. 457, it was held that a city treasurer was not entitled to credit for moneys paid upon warrants which were not drawn in accordance with the provisions of the charter. There was therefore good and substantial reason for the requirement of the statute in question that all warrants issued upon claims allowed against the county "must distinctly specify the liability for which they are drawn, and when it accrued." Language so imperative and mandatory does not, in our opinion, admit of its being held merely directory. And such was the holding of the Supreme Court of California in the case of Merriam v. The Board of Supervisors of Yuba

County, supra, in respect to the provision of the county government act of that state, declaring that "all warrants must distinctly specify the liability for which they are drawn, and when it accrued." The same opinion was also expressed by Judge Field in Argenti v. San Francisco, 16 Cal. 276, on the petition for rehearing in that case, where he said:

"The warrants by themselves furnish no ground of recovery. They are neither bills of exchange nor promissory notes. They are drawn against a particular fund, and are not payable absolutely, but only in case the designated fund is sufficient to meet them. Besides this, a large number of the warrants do not comply, in their form, with the requirements of the charter in force at the time. The eighth section of the third article of that charter provides that 'every warrant upon the treasury shall be signed by the controller, and countersigned by the mayor; and shall specify the appropriation under which it is issued, and the date of the ordinance making the same. It shall also state for what purpose the amount specified is to be paid.' Many of the warrants neither specify the appropriations under which they were issued, nor the date of the ordinances making the same. They would not, therefore, constitute any authority to the treasurer to pay them, even if there were funds in the treasury specially appropriated for their payment. The warrants must therefore be laid out of consideration in determining the case, and the right of the plaintiff to recover must turn upon the sufficiency of the claim arising from the alleged contracts with the city, or for the moneys alleged to have been received by the city for his use."

Smeltzer v. White, 92 U. S. 390, 23 L. Ed. 508, was an action against the counties of O'Brien, Buena Vista, and Clay, of the state of Iowa, growing out of certain warrants purporting to have been issued by those counties, payment of which was refused. It appeared that prior to 1860 the county judge had the management of the business of the county, with the usual powers and jurisdiction of county commissioners, and the county funds were authorized to be paid out by the treasurer only upon warrants issued by him. Revision 1860, §§ 241, 243, 360. It was made his duty "to audit all claims against the county; to draw and seal with the county seal all warrants on the treasurer for money to be paid out of the county treasury." Code 1851, § 106. The treasurer was authorized to pay only warrants thus drawn and sealed. The language of the statute was, "The treasurer shall disburse the same [the county money] on warrants drawn and signed by the county judge, and sealed with the county seal, and not otherwise." In 1860 the powers and duties of the county judge in this respect were transferred to a county board of supervisors (Act March 22, 1860; Rev. St. § 312, et seq.); and the clerk of the district court was constituted their clerk, and required to sign all orders issued by the board. The Supreme Court said:

"Now, as the treasurer can pay no orders or warrants unless they are sealed with the county seal, and as all warrants were required to be sealed by the county judge until 1860, when the board of supervisors was charged with his duties, except that their warrants are required to be signed by their clerk, it is very evident that no warrant is a genuine county warrant which is unsealed with the county seal. The statute expressly requires the board of supervisors, in all cases where the powers conferred by the act upon the board had been before exercised by the county judges, to conduct their proceedings under said powers in the same way and manner as had been provided by law in such cases for the proceedings of the county judge. Revision 1860, § 325. It is too clear, therefore, for debate, that the genuineness and regularity of issue of county warrants can exist only in cases when the

warrants are sealed with the county seal; and so it has been decided by the Supreme Court of Iowa, substantially, both in Prescott v. Gonser, 34 Iowa, 178, and in Springer v. The County of Clay, 35 Iowa, 243."

Again the court in that case said:

"The fifth assignment is that the court erred in overruling the defendant's offer to show that the warrants were regularly issued for legal claims against the county. The offer, we think, was correctly overruled. The evidence proposed had no relevancy to the issue in the case. That the warrants were issued for debts due by the county was of no importance if they were not genuine, and in the form that the law required to enable the holder to set them up as legitimate claims against the county. What availed it to the plaintiff that the county owed the sums of money mentioned in the warrants, if the warrants were nullities? His only means of recovering the money was through the warrants."

It is true that in Smeltzer v. White the required seal of the county constituted a part of the execution of the warrants, but we think that no very substantial distinction can be made between such a case and one where the warrants omit other matter made by the statute essential to their validity.

The present action being based solely upon the alleged warrants, and as they omit matter made essential by the statute of the state under which they purported to have been issued, they must be adjudged invalid. Being void, they were not the subject of ratification, and were unaffected by the resolution of the board of commissioners of the county embodied in the ninth finding of the court below. Dillon on Municipal Corporations (4th Ed.) § 465.

The judgment is reversed, and the cause remanded to the court below, with instructions to enter judgment for the defendant on the findings, with costs.