Points Decided.

(February 19, 1906.)

## DAVID McNUTT, Appellant, v. LEMHI COUNTY et al., Respondents.

[84 Pac. 1054.]

RIGHT OF APPEAL BY COUNTY—COUNTY EXPENDITURES ORDINARY AND EXTRAORDINARY—COUNTY INDEBTEDNESS IN EXCESS OF REVENUE—CONSTITUTIONAL PROVISION.

1. Answer made on behalf of the county in this case examined and held sufficient to constitute a defense to plaintiff's cause of action.

2. Section 1776 of the Revised Statutes, as amended by act of February 14, 1899, provides the right of appeal only for persons and taxpayers, and does not contemplate the county itself as a municipal corporation taking an appeal from the action or order of its own board of commissioners.

3. Under the provisions of section 3, article 8 of the constitution, no indebtedness or liability can be lawfully incurred by a county for any given year in excess of the income and revenue of such county for the same year without the assent of two-thirds of the qualified electors of the county voting in favor of incurring such indebtedness or liability at an election held for that purpose, unless such indebtedness or liability is incurred for an ordinary and necessary expense as authorized by the general laws.

4. Where county warrants were issued in the sum of $6,350 for the construction of a wagon road and the question of incurring such indebtedness was not submitted to a vote of the people, and the whole thereof was in excess of the income and revenue of the county for the year in which such indebtedness was incurred, and no provision was made for the payment thereof, such indebtedness is in violation and contravention of the provisions of section 3, article 8 of the constitution, and is therefore void.

5. A county as a municipal corporation cannot ratify an act done in direct violation of the constitution, and in such case the doctrine of ratification cannot be invoked.

6. The necessity for county warrants to be issued in conformity with the requirements of section 2006 of the Revised Statutes which provides that ''All warrants must distinctly specify the liability for which they are drawn and when it accrued,'' considered.

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District for Lemhi County. Hon. J. H. Stevens, Judge.

R. P. Quarles and Gus B. Quarles, for Appellant.

The amended petition or affidavit, and the stipulation of facts, show that none of the orders were ever appealed from, hence those orders are valid and bind the county. (*Johnson v. Savidge* 11 Idaho, 204, 81 Pac. 616; *Morgan v. Board of Commrs ,* 4 Idaho, 418, 39 Pac. 1118; *Picotte v. Watt,* 3 Idaho, 447, 31 Pac. 805; *Rogers v. Hays,* 3 Idaho, 597, 32 Pac. 259; *Dunbar v. Board etc.,* 5 Idaho, 407, 49 Pac. 409; *Corker v. Elmore Co. Commrs.,* 10 Idaho, 255, 77 Pac. 634; *School Dist. No. 25 v. Rice,* 77 Idaho, 99, 81 Pac. 155; *In re Grove Street,* 61 Cal. 453; *Babcock v. Goodrich,* 47 Cal. 488.)

In the case at bar no allegation of fraud is made, and no suspicion of unfairness or any intent to do other than their duty is shown against the board of commissioners in letting the contract to Penwell. (*Reclamation Dist. No. 537 of Yolo County v. Burger,* 122 Cal. 442, 55 Pac. 156.)

County commissioners or boards of supervisors act in a *quasi* judicial capacity, and in the absence of fraud, their decisions over matters within their jurisdiction, upon questions of fact, are without remedy other than by appeal, in the courts. (*McBride v. Newlin,* 129 Cal. 36, 61 Pac. 577; *Alameda Co. v. Evers,* 136 Cal. 132, 68 Pac. 475; *Santa Cruz Co. v. McPherson,* 133 Cal. 282, 65 Pac. 574.) Being within the scope and general powers of the board of commissioners, they having let the contract for the construction of a needed road, which has been received by the county as shown by the petition and stipulation of facts, the county thus receiving a benefit, and the provision of the constitution not having been violated, we say that the matters are *res adjudicata,* and not subject to collateral attack as made by respondents in this case. (*County of Sacramento v. Southern Pacific Co.,* 127 Cal. 217, 59 Pac. 568, 825.)

John Sinclair, Prosecuting Attorney of Lemhi County, for Respondents.

The building of the said wagon road was an extra-municipal power, and an extraordinary expenditure of the county, and could only be authorized and incurred under section 1762 of the Revised Statutes. "Commissioners of highways, in laying out highways, act under special statutory authority, and it must appear on the face of the proceedings, or by proof *aliunde*, that they acquired jurisdiction in the particular case." (*Miller v. Brown*, 56 N. Y. 383.)

A creditor by accepting the warrant drawn on the particular fund impliedly agrees to rely solely on such fund for payment of the warrant. (*Argenti v. San Francisco*, 16 Cal. 255; *Rose v. Estudillo*, 39 Cal. 270; 21 Am. & Eng. Ency. of Law, 2d ed., 22, and authorities.) It was held in *Rice v. Milwaukee*, 100 Wis. 516, 76 N. W. 341; "That as the future income from licenses is entirely uncertain in amount, and not dependent on any act of the city, moneys to be derived during the year cannot be considered on the question whether a city has exceeded its debt limit." The orders of the board could be attacked at any time, either directly or collaterally. (*Fremont County v. Brandon*, 6 Idaho, 486, 56 Pac. 264; *Dunbar v. Canyon County*, 5 Idaho, 407, 49 Pac. 409.)

Provisions similar to section 3 of article 8 of the constitution of the state of Idaho have been incorporated in the constitution of many states for the establishment of a financial system on a basis that should closely approximate the basis of cash, and the authorities bearing on the subject are very numerous. It will be sufficient to refer to the authorities of our own state. (*Bannock Co. v. Bunting*, 4 Idaho, 156, 37 Pac. 277; *Theiss v. Hunter*, 4 Idaho, 788, 45 Pac. 2; *Ada Co. v. Bullen Bridge Co.*, 5 Idaho, 79, 88, 47 Pac. 818, 36 L. R. A. 367; *Dunbar v. Canyon Co.*, 5 Idaho, 407, 49 Pac. 409; *Boise City v. Union Bank etc. Co.*, 7 Idaho, 342, 63 Pac. 107.) Partial payments on a contract of a municipal cor-

poration do not amount to a ratification. (*Milford v. Milford Water Co.*, 124 Pa. St. 610, 17 Atl. 185, 3 L. R. A. 122.)

It is well settled that a municipal corporation cannot validate by ratification a contract beyond its corporate powers to make, or a contract void from the beginning. (*Berka v. Woodward*, 125 Cal. 119, 73 Am. St. Rep. 31, 57 Pac. 777, 45 L. R. A. 420; *McCracken v. San Francisco*, 16 Cal. 591; *Grogan v. San Francisco*, 18 Cal. 590; *King v. Frankfort*, 2 Kan. App. 530, 43 Pac. 983; *Prescott v. Vershire*, 63 Vt. 517, 22 Atl. 655.) The Penwell warrants are non-negotiable instruments. (21 Am. & Eng. Ency. of Law, 2d ed., p. 26, and authorities cited; *Wells v. Monroe Co.*, 103 U. S. 74, 26 L. ed. 430; *People v. Supervisors of El Dorado Co.*, 11 Cal. 170; *Bank of Santa Cruz County v. Bartlett*, 78 Cal. 301, 20 Pac. 682; *People v. Gray*, 23 Cal. 125; *Dana v. San Francisco*, 19 Cal. 486; 1 Dillon on Municipal Corporations, sec. 487.) If the road contract is void, the warrants are void. (*Perry v. Ames*, 26 Cal. 372.) A purchaser of municipal warrants is bound to take notice of the constitutional limitation upon municipal indebtedness. (*Buchanan v. Litchfield*, 102 U. S. 178, 26 L. ed. 138; 20 Am. & Eng. Ency. of Law, 2d ed., 1142, and authorities cited.) The road cannot be returned, for the reason that other public money has been spent upon it, and it belongs to the public. (*Litchfield v. Ballou*, 114 U. S. 190, 29 L. ed., 132, 5 Sup. Ct. Rep. 820.) The warrants do not comply with section 2006 of the Revised Statutes of Idaho. (*Bingham Co. v. First Nat. Bank*, 122 Fed. 16, 58 C. C. A. 332; *Raymond v. People*, 2 Colo. App. 329, 30 Pac. 504.)

## STATEMENT OF FACTS.

This is an appeal from an order or judgment denying an application for a writ of mandate to compel Lemhi county and the commissioners and treasurer thereof to pay five certain county warrants, with interest thereon, and, if in the opinion of the court it was necessary that the commissioners be commanded to levy a special tax for the purpose of paying such warrants and interest, that the writ require them to do so. To the complaint or petition the defendants, who are respondents here, answered, pleading *ultra vires*, the statute of limi-

tation and certain matters in bar and avoidance. The issues thus made were determined on stipulated facts, and oral and documentary evidence. Judgment was entered in favor of respondents. The record contains the pleadings, the stipulated facts and all of the evidence offered at the trial. The entire case as made and heard by the trial court is before us. It appears from the facts stipulated that on the tenth day of January, 1893, a petition signed by seventy-nine persons alleged to be resident citizens and taxpayers of Lemhi county, praying for the construction of a wagon road from Silver Star creek or Neiman's ranch to Fourth of July creek, was presented to the board of commissioners for their action thereon, which petition had been filed on the thirtieth day of December, 1892; that the petition was acted upon and approved by the board of commissioners on the tenth day of January, 1893, and that the clerk of the board was thereupon ordered to advertise for bids to construct the road—bids to be opened and considered by the board on the first day of February, 1893. So far as the record shows, the bids were not opened, if any were received under such advertisement, and nothing further was done until on the ninth day of April, 1894, at which time they made another order directing the clerk to readvertise for sealed proposals for the construction of the road, in accordance with plans and specifications then on file in the office of the clerk, and that said bids were to be opened on the tenth day of May, 1894; that such advertisement was made; that on the eleventh day of May, 1894, bids for the construction of the road were opened and considered by the board, and of all of the bids submitted the bid of one Oscar E. Penwell was the lowest, and thereupon a contract was entered into by the county with Penwell for the construction of the road according to the plans and specifications for the sum of $5,500. After the construction of the road, viewers were appointed by the board to view and report whether the road had been constructed in accordance with the plans and specifications. The viewers reported that the road had been constructed according to the plans and specifications, and on the twenty-first day of July, 1894, the board accepted the

report of the viewers, and the road was received by the board.
The board thereupon ordered warrants to be drawn on the
general road fund for the amount of the original contract
price, to wit, $5,500, and the sum of $850 for extra work
done thereon, making a total of $6,350; and thereupon the
warrants of the county were executed and delivered to Pen-
well under order of the board. These warrants were all in
the following form, the only difference being as to the num-
bering and amounts for which drawn: "No. 44. The State
of Idaho, Lemhi County. The Treasurer of the County of
Lemhi: Pay to O. E. Penwell one thousand dollars, out of any
money in the county road fund. Given at the courthouse, at
Salmon City, this 21st day of July, 1894. By order of the
board of county commissioners.

"$1,000.00                    TIMOTHY DORE,
                              "County Auditor."

All of the warrants were on the twenty-third day of July,
1894, presented to the county treasurer for payment, but
none of them were paid, and the treasurer indorsed thereon
the fact of the presentation and of nonpayment thereof for
want of funds, and the warrants were then and there duly
registered by him. In the month of January, 1899, two of
the warrants for $1,000 each were paid by the county, and
thereafter, in January, 1900, another warrant for $1,000 was
paid by the county, and in the month of March, 1900, the
remaining warrants, viz., two for $1,000 each, two for $500
each, and one for $350, were sold and transferred to the
plaintiff, who is appellant here; that the warrants so sold
were duly presented to the treasurer of Lemhi county on the
13th of September, 1904, and payment demanded, which
was refused; that the assessment-roll of Lemhi county for the
year 1892 contained the names of four hundred and twenty-
four persons, and for the year 1893 the names of five hundred
and nineteen persons, and for the year 1894 the names of
five hundred and forty-two persons; that the levy of a prop-
erty road tax for general purposes in Lemhi county for the

year 1894 amounted to $3,972.94, and the amount collected on the levy was $3,891.63, exclusive of poll tax.

The foregoing allegations are followed by a statement of the warrants issued on the road fund by the board for that year, and also a statement of the amount of warrants issued upon the various funds for the year 1894, making a total of $43,210.49; that the total amount of money received by the county for the year 1894 available for the payment and discharge of its obligations was the sum of $32,990.29, and that the total expenditures for the year were $43,216.92; that no provision was made by the board at the time of incurring the Penwell indebtedness, nor before, for the collection of an annual tax to pay these warrants; that no election was held at which the people of the county might vote upon the question of incurring the indebtedness; that no order was made by the board directing the Penwell warrants, or any part thereof, to be paid from a general or current expense or any other fund; that in the month of April, 1900, the board made an order finding that there was a legal warrant indebtedness, including interest, against Lemhi county amounting to the sum of $50,877.65, evidenced by warrants against the general or several funds of the county theretofore regularly issued in payment of legal claims, among which warrants were included the warrants sued on in this action; that at an election duly held pursuant to such order more than two-thirds of the qualified voters of Lemhi county voted in favor of issuing bonds to raise money with which to pay the warrant indebtedness, and that pursuant to resolutions and orders of the board and the election so held, bonds of the county to the amount of $25,500 were issued, and with the money realized therefrom the board redeemed warrants to that amount, but not the warrants sued on herein.

It is also stipulated that the receipts for current expenses for the year 1894 amount to $6,250; that none of the orders of the board above mentioned were ever amended or rescinded, nor was any appeal taken therefrom.

*Judgment affirmed.*

AILSHIE, J.—The first assignment to the effect that the court erred in admitting any evidence on behalf of the defendant, for the reason that the amended answer did not state facts sufficient to constitute a defense, is not well taken. The answer presented issues sufficient, if found true, to defeat plaintiff's recovery—exhibit "B" introduced by defendant, and to which plaintiff objected, and concerning the admission of which he now complains, was competent for the purpose of showing the number of taxpayers within Lemhi county for the year 1892, and its admission was not error. It was a certified copy of the names of all the taxpayers of the county for that year as shown by the assessment-roll and subsequent roll for the year. This evidence, however, did not establish the fact as to what number of the taxpayers for that year were qualified voters, and not being followed up by proof to that effect amounted to nothing. (Rev. Stats., sec. 1762.)

The liabilities incurred for the year exceeded the revenue by $10,277.63. The entire road fund of the county for 1894 amounted to only $3,972.94, while the warrants issued for that year on the road fund amounted to $9,631.45. None of the orders of the board were ever appealed from and it is now contended that they are final. It should be observed, however, that section 1776 of the Revised Statutes, as amended February 14, 1899, applies only to persons and taxpayers and has no application to the municipality itself. The legislature never contemplated that the board of commissioners would ever want to appeal from their own action in making an order or paying a claim. In County of Ada v. Bullen Bridge Co., 5 Idaho, 88, 47 Pac. 818, 36 L. R. A. 367, the court said: "It is the opinion of this court that the provisions of section 1776 of the Revised Statutes do not apply to a case where the county is seeking to protect itself against the illegal or fraudulent acts of its board of commissioners in the issuance of warrants. And we think there will be nothing found in the other decisions of this court in any way contravening this view." The county itself through its board of commissioners may resist the payment of a warrant which has been wrongfully and unlawfully issued, although no appeal was ever taken

by anyone from the order directing its issuance. This view is not in conflict with any of the former decisions of this court to which our attention has been directed.

Section 3 of article 8 of the constitution provides: "No county, city, town, township, board of education or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void; provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state."

The building a courthouse, bridge or wagon road is not an ordinary expense within the meaning of the foregoing constitutional provisions. (Bannock County v. Bunting, 4 Idaho, 156, 37 Pac. 277; Dunbar v. Board of Commissioners, 5 Idaho, 407, 49 Pac. 409.) · The indebtedness having been incurred for an extraordinary expense and in excess of the revenues provided for that year, and not having been authorized by a two-thirds vote of the people at an election held for that purpose, was in violation of the foregoing provision of the constitution. (Dunbar v. Board of Commissioners, supra; Ball v. Bannock County, 5 Idaho, 605, 51 Pac. 454.) In Dunbar v. Board of Commissioners, the court, speaking through Mr. Justice Quarles, said: "Under section 1762 of the Revised Statutes, a bridge cannot be built at a cost to exceed $1,000, unless one-third of the taxpayers who are voters of the county petition therefor, but since the adoption of our constitution this provision of the statute only applies when the revenues for the fiscal year are not exceeded; for if such expenditure

exceeds, when added to the necessary expenditures of the county for the fiscal year, the revenue for that year, then such bridge cannot be built without a two-thirds vote as provided in section 3, article 8 of the constitution.''

It appears that for the year 1894 the county raised $6,621.54 revenue available for current expense, and appellant suggests that under section 946 of the Revised Statutes, as amended by act of February 7, 1899 (Sess. Laws, 1899, p. 131), the indebtedness incurred might have been paid out of the general fund of the county. One reason why this could not have been done was that it was used up for other purposes, and another reason is that the board never availed itself of the benefits of this statute and never ordered any part of this claim paid out of the general fund. A like view was expressed in *Ada County v. Bullen Bridge Company, supra,* where the court said: ''Again, it does not appear that any attempt was ever made by the board of commissioners to avail themselves of the provision of section 11 of the act of March 13, 1891. No warrants were ever drawn upon the general fund, nor were there to be, under the terms of the contracts. Nor was there any special or other tax levied to meet the payments stipulated for in said contracts. The appeal to section 11 of the act of March 13, 1891, seems to have been entirely an afterthought, due, we apprehend, more to the acumen of counsel than any desire on the part of the commissioners to comply with the law.''

It is also argued that since the people of the county voted to issue bonds in a sufficient amount to cover all other indebtedness of the county and include these warrants, that such action amounts to a ratification and takes the place of an election as required by section 3 of article 8 of the constitution. This contention was made in *Dunbar v. Board of Commrs.,* and the court said: ''It is true that an election was held to ascertain the will of the electors of Canyon county as to whether bonds should be issued 'for the purpose of funding the outstanding indebtedness of said Canyon county incurred prior to January 14, 1895, and as evidenced by the outstanding warrants of said Canyon county.' But the record does not

show that the question of incurring the debts for building the Parma and Caldwell bridges, amounting to about $15,000, was submitted to the electors by petition or otherwise." It is clear that there can be no ratification by a county of an act done in direct violation of the constitution. The constitution requires as a condition precedent to incurring such a liability as the one sued on, that the question should be first submitted to a vote of the people of the county and receive "the assent of two-thirds of the qualified electors thereof, voting at an election held for that purpose." The purpose of the constitution is to require the specific question submitted to the electors unaccompanied and unencumbered with any other subject or question.

The warrants sued on were not issued in conformity with the requirements of section 2006 of the Revised Statutes, which provides that: "All warrants must distinctly specify the liability for which they are drawn, and when it accrued." This statute was held mandatory by the United States circuit court of appeals in *Bingham County v. First National Bank of Ogden,* 122 Fed. 16, 58 C. C. A. 332. (See, also, *Raymond v. People,* 2 Colo. App. 329, 30 Pac. 504.)

The judgment of the lower court must be affirmed, and it is so ordered. Costs awarded to respondent.

Sullivan, J., concurs.

Stockslager, C. J., dissents.

STOCKSLAGER, C. J., Dissenting.—I cannot see my way clear to concur in the conclusion reached by my associates. The facts were stipulated and are fairly stated in the opinion, but the conclusion to be drawn from them is where I differ from the majority. As stated in the opinion, the contract was awarded to Mr. Penwell by the board of county commissioners after the clerk, on the order of the board, had advertised for bids. He completed the work, the road was accepted by the county through its legally constituted agents, and warrants were issued in compliance with the contract. No charge or even intimation of bad faith on the part of the board of

commissioners, Mr. Penwell, or anyone else connected with the transaction or anything leading up to the final issue of the warrants. No appeal taken from any of the orders of the commissioners relative to the contract or the issue of warrants. The warrants for more than half of the original contract price were paid by the county treasurer before the legality of the remaining warrants was questioned. This, too, after Mr. Penwell had disposed of them to the appellant, who, in the ordinary acceptation of the term, had purchased in good faith and for value; then it is discovered that there may be a legal, certainly not moral, excuse for refusing to pay a debt that had been contracted for the use and benefit of the inhabitants of the county.

The county auditor of Lemhi county issued the warrants on the order of the county commissioners to Mr. Penwell in payment for work done on the road, and after it had been accepted on July 21, 1894, on the twenty-third day of July they were presented to the county treasurer for payment and indorsed by him "not paid for want of funds." In April, 1900, the county commissioners made an order finding the legal indebtedness of the county to be $50,877.65, which included the warrants in controversy. At an election thereafter held a sufficient number of the qualified voters of the county voted in favor of issuing bonds for the redemption of the outstanding warrants. The first time the legality of those warrants was ever questioned as shown by the record was on the sixteenth day of July, 1900, when the commissioners of the county declared the warrants illegal and ordered the county treasurer not to pay them. Thus we find that lacking five days of six years, these warrants were treated as a valid subsisting debt against the county. All acts of the county commissioners are presumed to be legal until the contrary is shown, and the law provides for an appeal "from any order, decision or action of the board while acting in an official capacity—by any person aggrieved thereby or by any taxpayer of the county when any demand is allowed against the county, or when he deems any order, decision or action of the board illegal or prejudicial to the public interests." The

legislature amended this section in 1899 (Sess. Laws 1899, p. 248), but in no way to affect the merits of this case; it only provides the time in which the appeal must be taken after the county commissioners have published a statement of their proceedings, etc.   It could not affect this action, as all orders, with the single exception of the one made by the board in July, 1900, in which they declared the warrants illegal and authorized the county treasurer not to pay them, were under section 1776, *supra*.   In the majority opinion it is said: "It should be observed, however, that section 1776 of the Revised Statutes, as amended February 14, 1899, applies only to persons and taxpayers and has no application to the municipality itself.   The legislature never contemplated that the board of commissioners would ever want to appeal from their own action in making an order or paying a claim."   Of course the statement that "the board of commissioners would never want to appeal from their own action" is literally true—if they become dissatisfied with any order made, they can rescind it, and then if the "person or taxpayer" is dissatisfied with their action there is a remedy by appeal.   It is shown by the record in this case that not only the board of county commissioners were satisfied with every step taken from January 10, 1892, down to the order of July, 1900, declaring the warrants illegal, but the "persons and taxpayers" were also satisfied.   Within this time the petition asking for the construction of a road was acted upon and approved January 10, 1893.   On the ninth day of April, 1894, another order was made directing the clerk to advertise for bids.   On May 11, 1894, the bids were opened, and the bid of O. E. Penwell was accepted.   Viewers were appointed by the board of commissioners, who reported said road to have been constructed according to the contract, and on the twenty-first day of July, 1894, the report of the viewers was accepted by the board and warrants were ordered drawn in payment for said work. On the same day the auditor drew the warrants in compliance with the order of the board and delivered the same to contractor Penwell.   Each and all of these orders were appealable, yet the "people and taxpayers" of the county did not

see fit to take an appeal from any of them, with section 1776 of the Revised Statutes, as amended in 1899, enjoining upon them the duty of doing so if they were dissatisfied with any of the orders of the board of commissioners. It is apparent that the county commissioners and the "people and taxpayers" were in harmony with the former action of the board as late as January, 1900, as it is shown that two of the warrants of $1,000 each were paid in 1899, and one for $1,000 was paid in January, 1900. That the remedy for reviewing the action of the board of commissioners is by appeal has been repeatedly announced by this court. In *Morgan v. County Commrs. of Kootenai Co.*, 4 Idaho, 418, 39 Pac. 1118, the court sustains the theory of appellant. The syllabus says: "When order for the issue and sale of bonds has been made and entered of record by the board of county commissioners of any county, proceedings in equity to restrain the issuance and sale of such bonds in pursuance to such order will not lie, the court having no jurisdiction in equity, where there is a plain, speedy and adequate remedy at law, by appeal from the order of the board." In *Picotte v. Watt*, 3 Idaho, 447, 31 Pac. 805, the first paragraph of the syllabus says: "Where the statute provides a plain, speedy and adequate remedy it must be followed." In *Rogers v. Hays*, 3 Idaho, 597, 32 Pac. 259, the syllabus says: "Writ of review does not lie from the action of a board of county commissioners, the statute having provided a speedy and adequate remedy by appeal." In *Johnson v. Savidge*, 11 Idaho, 204, 81 Pac. 616, a decision of this court, it is said: "If the board of county commissioners has jurisdiction to create justices' precincts within the limits of an incorporated city, and does so, its action can only be reviewed by appeal." Again, in *School District No. 25 v. Rice*, 11 Idaho, 99, 81 Pac. 155, this court says: "The remedy for review of the action of a board of county commissioners in this state is by appeal from the order or act complained of."

It would seem from the authorities above cited that all orders of a board of county commissioners become final unless rescinded or appealed from within the statutory time, and the stipulation shows neither was done in this case. The ques-

tion arises here, Could the board of county commissioners by an order declaring the warrants in question illegal, invalidate all the orders of their predecessors leading up to the issue and delivery of the warrants? The statute enjoins upon the members of the board certain duties; they may make an order and thereafter rescind it, but after orders have been made upon which contracts have been based, work performed, the work accepted, warrants issued and delivered, part paid and part passed into the hands of a third party, can they invalidate all former acts in the face of the statute that provides that all orders of the board must be appealed from by anyone dissatisfied, etc.? I say no. The county must act in good faith as well as the citizen. It has no more right to take the laboring man's earnings or the capitalist's money than any other corporation or individual. Penwell did the work; the county got the benefit; McNutt paid his money for the warrants, and now the county seeks to avoid payment on the ground that some of the orders of a former board had not complied with the strict letter of the law. An individual would not be permitted to escape liability on such a plea. Why should the county? If there was a plea of fraud in any of the transactions leading up to the issue and delivery of the warrants, the situation would be different; but it is shown that every transaction on the part of the board in letting the contract, accepting the work and issuing warrants was in the utmost good faith, and that the county received value for the warrants. Now, six years after the work is completed, to allow a board to declare the warrants invalid and refuse to pay them, does not meet with my idea of justice, and the law does not countenance injustice in any transaction. I further think these "persons and taxpayers" (and the individual members of the board of county commissioners who now seek to avoid payment, belong to one or the other, or both), ratified all former acts of the board of commissioners when they voted to bond the county for the outstanding warrants, the warrants in controversy being of the number enumerated in the list outstanding. But it is useless to discuss this question further. I think the judgment should be reversed.