(November 27, 1923.)

S. K. MITTRY and GEORGE MITTRY, Copartners Doing Business Under the Name of the NORTH PACIFIC CONSTRUCTION COMPANY, Respondent, v. BONNE-VILLE COUNTY, IDAHO, Appellant.

[222 Pac. 292.]

COUNTY INDEBTEDNESS—CONSTITUTIONAL AND STATUTORY LIMITATIONS —CLAIM IN EXCESS OF—ACTION ON.

1. When, by reason of the constitution and statutes, a county is forbidden to incur indebtedness for a certain purpose without the authority of an election and the people at an election authorize the issuance of bonds in a certain amount, the commis-

sioners cannot incur a valid indebtedness for that purpose in excess of that amount.

2. In such case no action lies against the county on a claim in excess of the amount authorized by the people.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. Robert M. Terrell, Judge.

Action on claim against county. Judgment for plaintiff. *Reversed.*

C. E. Crowley and O. A. Johannesen, for Appellant.

A complaint against a municipal corporation, seeking to establish the liability of the corporation, is demurrable unless it states all the facts necessary to make the alleged liability complete. (*Waltham v. Town of Mullaly,* 27 Neb. 483, 43 N. W. 252; *Gilligan v. Town of Grattan,* 63 Neb. 242, 88 N. W. 477; *Town of Clearwater v. Town of Garfield,* 65 Neb. 697, 91 N. W. 496.)

The erection of a courthouse is not an ordinary or necessary expense authorized by the general laws of the state. (*Bannock County v. Bunting,* 4 Ida. 156, 37 Pac. 277; *Ball v. Bannock County,* 5 Ida. 602, 51 Pac. 454.)

All who contract with a municipal corporation are charged with notice of the extent of its powers, and of the powers of its officers and agents with whom they contract. (*McBean v. Bernardino,* 96 Cal. 183, 31 Pac. 49; McQuillin, Mun. Corp., p. 4104, par. 1902.)

A county as a municipal corporation cannot by its acts ratify an indebtedness incurred in direct violation of the constitution, and no estoppel can be invoked against the county because of acceptance of the work, or on the ground of *quantum meruit.* (*McNutt v. Lemhi County,* 12 Ida. 63, 84 Pac. 1054; *School Dist. v. County,* 30 Ida. 400, 164 Pac. 1174; *Quinby v. Consumers' Trust Co.,* 140 Fed. 362.)

Contracts or indebtedness made by municipal corporations in excess of the debt limit are at least invalid as to the extent of the excess. (McQuillin, Mun. Corp., sec. 2239,

Supp. 1920, vol. 8; 28 Cyc. 1560; 19 R. C. L., sec. 284, p. 987; *Miller v. Ammon,* 145 U. S. 421, 12 Sup. Ct. 884, 36 L. ed. 759, and cases cited.)

Otto E. McCutcheon, for Respondent.

It was not necessary for plaintiff to allege that the contract was not *ultra vires.* (5 McQuillin, Mun. Corp., sec. 2495, p. 5180; *Richmond County Society, etc., v. New York,* 73 App. Div. 607, 77 N. Y. Supp. 41.)

Obligations incurred subsequently to respondent's contract are immaterial. (*Van Dusen v. State,* 11 S. D. 318, 77 N. W. 201; 1 Abbott, Mun. Corp. 294.)

Substantial compliance with statutory and constitutional provisions is sufficient. (*Dunbar v. Board of Commrs.,* 5 Ida. 407, 49 Pac. 409.)

It is doubtful whether there are any sufficient allegations of error in the assignments. (*Newport Water Co. v. Kellogg,* 31 Ida. 574, 174 Pac. 602; C. S., sec. 7170.)

McCARTHY, J.—This is an action against appellant county to recover the balance of the contract price for the erection of a courthouse. The complaint alleges that the respondent copartnership and appellant county entered into a written contract by which the former agreed to erect a courthouse for the latter for the contract price of $152,525; that said building was erected and completed in accordance with the contract and was accepted by the architects; that in accordance with a provision of the contract authorizing such alterations as might be ordered by the architect, certain alterations were made at a cost of $6,816.73, making the total cost $159,341.73; that appellant has paid respondent $140,461.08, leaving a balance of $18,880.65; that respondent presented a claim for this balance to the board of county commissioners, which was rejected. Within the six months allowed by the statute respondent sued for the balance. To this complaint appellant demurred generally and specially. It also answered alleging that the contract was *ultra vires* and void under the provisions of Const., VIII, 3, and C. S.,

secs. 3463 and 3464. These questions are also raised by the affirmative defense. The facts alleged in that regard are as follows: The people of appellant county voted bonds in the amount of $250,000 for procuring a courthouse site and building a courthouse. $40,000 of said fund was used for a site. Respondent's contract covered only part of the work of erecting the courthouse and other contracts were let covering other parts. The total amount of these contracts exceeded the amount left of the $250,000, which had been voted by the people. By reason of these facts appellant had no funds available for the payment of the balance of the contract price. The court found that the contract was let, the work and alterations were completed in accordance with the contract, and the full contract price, including the alterations, was $159,341.73. As to the validity of the contract and claim the court made the following finding:

"That at the time the said contract was made and entered into by the plaintiffs and the defendant, and delivered to the plaintiffs, there was in the courthouse construction fund of said County out of which the expenditures to be made under the terms of said contract, were to be paid, the sum of $167,810.00, all of which was unappropriated and no contracts had been made by defendant payable out of said unappropriated balance of said fund; that said sum had been raised through the sale of bonds of the said County, authorized by vote of the qualified electors of said County for the purpose; and that all formalities in respect to advertising for bids and letting said contract were complied with prior to the execution and delivery of said contract."

Respondent had judgment for the balance of $18,880.65, with interest, from which this appeal is taken.

Appellant assigns the overruling of the demurrer as error, claiming the complaint was insufficient because it did not negative the idea that the contract was in violation of the constitutional and statutory provisions above mentioned. The court did not err in this respect. These matters were affirmative defenses and properly treated as such.

Specifications of error numbered 12, 13, 14 and 15 deal with rulings of the court as to the admission and exclusion of evidence. We find no reversible error here.

The vital question in the case is whether the evidence is sufficient to support the finding that there was sufficient money available, properly appropriated, for the payment of respondent's claim at the time it was presented. Respondent contends that this question cannot be considered, because appellant does not properly specify in its brief the particulars in which the evidence is insufficient. While we do not commend the form in which the question is presented, yet we think that, in substance and effect, the specifications of error in the findings may be considered as specifications of the insufficiency of the evidence.

The facts shown by the evidence are as follows: On June 3, 1919, the people of appellant county at an election authorized the issuance and sale of $250,000 of county bonds to build a courthouse and jail. These were sold at a premium of $3,175. Eighty-five dollars was added to the fund through the auction sale of some county property. The total available was thus $253,260. Approximately $12,500 was paid the architects. Thirty-one thousand six hundred and fifty dollars was paid for the foundation. Thirty-seven thousand five hundred dollars was paid for the site. All this happened before respondent's contract was let. At the time of the letting of that contract there was only $167,810 in the courthouse fund. May 1, 1920, the board of commissioners ordered a call for bids for the erection and completion of the courthouse and jail. June 7th, at a meeting of the board the bids were opened and acted upon as shown by the following quotation from the minutes:

"June 7th, 1920. 'This being the time heretofore fixed for receiving proposals for the erection and completion of a court house pursuant to an order and call for bids for the same made and entered on the first day of May, in the pursuance to the same the following bids and proposals under said order were submitted to this board at 2:00 p. m. on

the above named date. The board proceeded to open said proposals which were found to be as follows, to wit: For the erection and completion of said buildings less furniture and fixtures, as per plans and specifications as prepared by Fisher & Akin: D. J. Sweeney, $158,000; Salih Brothers, $162,320; North Pacific Construction Company, $152,525. The North Pacific Construction Company bid being the lowest and best bid, Andrew Burkman made a motion seconded by Christian Anderson that the contract for the erection of the court house be awarded to the North Pacific Construction Company, and a contract be · drawn to that effect. In the matter of bids for plumbing and heating for said court house, Bonneville County, Idaho, the following bids were submitted: George Tway, $23,165; Tarbet Heating & Plumbing Company, $20,900. The Tarbet Heating & Plumbing Company's bid being the lowest and best bid, Andrew Burkman made a motion seconded by Christian Anderson, that said contract be awarded to the Tarbet Heating & Plumbing Company, and said contract be drawn to that effect."

December 13, 1920, the county commissioners decided, on the advice of the architect, that certain additions should be made, to wit, an iron cornice and a fire wall. They asked only respondent to bid and accepted his bid of $5,975. It thus appears that June 7th the amount of money in the fund was $167,810 and the commissioners let contracts for the erection of the building and installing of the plumbing and heating totaling $173,425, and the addition of the extras brings the amount up to $179,400, being $11,590 in excess of the amount available. It certainly cannot be denied that both respondent's contract and that of the heating and plumbing company were necessary for the erection and completion of the courthouse as authorized by the election and as contemplated by the call for bids and by the resolution authorizing the contracts. It is clearly proved that the cost of erecting the courthouse exceeded the income and revenue available for such purposes, and that therefore the indebtedness could not be incurred unless the necessary funds were

provided by an authorized bond issue. (Const., VIII, 3, and C. S., secs. 3463, 3464.) The only money available was the $253,260 raised by the bond issue. Of this only $167,810 was left for the purpose of erecting and completing the building at the time the contracts were let, and the commissioners contracted to spend $173,425. As to the excess over the amount available in the fund, the indebtedness attempted to be created by the contracts was void. (*Deer Creek Highway Dist v. Doumecq Highway Dist.*, 37 Ida. 601, 218 Pac. 371; *Twohy Bros. Co. v. Ochoco Irr. Dist.* (Or.), 216 Pac. 189.) When an indebtedness is forbidden by the constitution and statutes of this state without the authority of a bond election, and the people at such election authorize the commissioners to incur indebtedness in a certain amount, the commissioners cannot incur a valid indebtedness above such amount. For reasons given in *Deer Creek Highway Dist. v. Doumecq Highway Dist., supra,* and which need not be repeated here, any indebtedness above the amount in the courthouse fund was void and cannot be recovered on *quantum meruit* or in *assumpsit.* Respondent, dealing with the county, was bound to take notice of constitutional and statutory limitations of its powers in regard to incurring indebtedness. (*Deer Creek Highway Dist. v. Doumecq Highway Dist., supra.*)

The district court acted upon the theory that there was enough money in the fund at the time the contract was let to pay the amount of respondent's contract, because there was $167,810 available and the amount of respondent's contract, even including the extras, was only $158,500; this in spite of the fact that immediately afterward, and as a part of the same transaction, the plumbing and heating contract was let in the amount of $20,900. In other words, it was held the county commissioners were properly exercising their power if they used practically all the money for the erection of the building and left nothing for the plumbing and heating. We cannot concur in this view of the matter. Naturally one contract had to be signed at least a few moments before the other. But, considering the

entire record, the letting of the contracts was one trans-
action for one common purpose, to wit, the erection and
completion of a courthouse, and all parties concerned had
notice of this. Respondent and the plumbing and heating
contractor had equal rights in the amount available in the
fund in proportion to the amounts called for by their re-
spective contracts, and neither of them could collect anything
in excess of that.

Under no possible view of the facts, or the law applicable
thereto, was the trial court justified in adding the amount of
the extras to the original contract price and making the
whole amount a preferred claim. By the court's own logic
the plumbing and heating company's contract for $20,900
had precedence of respondent's claim for the extras.

The money available was paid out as the work progressed
until the fund was exhausted. If it had been misappro-
priated by the commissioners, that would constitute no de-
fense to the county. But there is no evidence of mis-
appropriation or improper use; on the contrary, the record
shows a proper use and application of the fund. When
respondent's claim was presented to the board of commis-
sioners, and this action was brought, the money available
had been exhausted. The claim was properly denied by
the board and respondent could not recover in *assumpsit*.

For the reasons given above the judgment is reversed,
with costs to appellant.

Budge, C. J., and Dunn, William A. Lee and Wm. E. Lee,
JJ., concur.