STATE PROPERTY & BUILDINGS COM-
MISSION of the Commonwealth of
Kentucky et al., Appellants,

v.

William H. HAYS et al., Appellees.

Court of Appeals of Kentucky.

April 28, 1961.

Joseph R. Rubin, Louisville, John Breckinridge, Atty. Gen., Holland McTyeire, Asst. Atty. Gen., for appellants.

Ed. P. Jackson, Bill V. Seiller, Louisville, for appellees.

PALMORE, Judge.

This is a declaratory judgment suit challenging the validity of Chapters 128 and 129 of the Acts adopted by the General Assembly at its regular biennial session in 1960 (House Bills 274 and 275, respectively), which provide for the acquisition and compulsory use of voting machines by the several counties. The chancellor upheld in its entirety H.B. 274 (KRS 125.310 to 125.430) and adjudged H.B. 275 (KRS 118.-450) to be valid except for subsection (7), which he held void but severable from the remainder of the statute. Both sides appeal.

H.B. 274 empowers the State Property and Buildings Commission to purchase voting machines from the proceeds of bonds payable out of revenues to be derived from leasing the machines to the various counties choosing to avail themselves of this method. In deference to Const. § 157 each lease is to be for a term of one year, renewable annually at the option of the county over the period necessary to amortize the bonds, which are secured by first mortgage on the machines. At the end of this period the county acquires unencumbered title to the machines. This is a familiar plan of financing, sanctioned by an array of precedent unnecessary to cite in this opinion. We find nothing in the provisions relating to the reserve fund, the right of foreclosure and appointment of a receiver, and the combining of two or more counties in one

project, that offends any constitutional principle. These aspects of H.B. 274, though diligently contested in the trial court, are not seriously questioned in the taxpayer's brief on appeal. It is, however, contended that the subject matter of the act exceeds the scope of its title, violating Const. § 51.

The title of H.B. 274 is, "An Act relating to voting machines, and declaring an emergency," and it is our opinion that the provisions for financing acquisition of the machines are germane to it. Cf. Miller v. City of Louisville, Ky.1959, 321 S.W.2d 237, 241.

KRS 56.450(4), enacted as a part of Article XIII, Ch. 68, Acts of 1960 (H.B. 439), provides as follows: "Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, all revenue bonds issued by state agencies except those bonds issued by the state colleges or university, shall be issued under the provisions of Chapter 56 of the Kentucky Revised Statutes." This act, on its face conflicting with H.B. 274, was enrolled March 17, 1960, and signed by the Governor on the same day. By its terms the section under discussion became operative July 1, 1960. H.B. 274 was enrolled March 15, 1960, and signed by the Governor March 25, 1960. It became operative immediately.

In event of irreconcilable conflict between two acts passed at the same session the law last enacted, being the later expression of the legislative will, must prevail. However, statutes enacted at the same session "are presumed to be imbued with the same spirit and actuated by the same policy, and must be construed, if possible, so as to effectuate both acts. If one of the inconsistent acts contains an emergency clause, and the other does not, it is presumed that the General Assembly intended the act with the emergency clause to prevail." Campbell County Election Commission v. Weber, 1931, 240 Ky. 373, 42 S.W.2d 511, 512. And "repeals by implication are never favored and will be sanctioned only when there is such a conflict between the two that effect

can not be given to both." Sumpter v. Burchett, 1947, 304 Ky. 858, 202 S.W2d 735, 736. Under these principles we construe the provisions of H.B. 274 as an authorized exception to KRS 56.450(4). See also County Board of Education of Daviess County v. Fiscal Court of Daviess County, 1927, 221 Ky. 106, 298 S.W. 185.

H.B. 275 re-enacted KRS 118.450, which theretofore had consisted of three subsections, with the addition of four new subsections numbered (4) through (7). Subsections (1) through (3), the original statute, relate to the cost of elections and provide for reimbursement by the state to the county of a certain portion of election expenses, not exceeding $20 per precinct. Subsection (4) requires all counties to acquire voting machines for each precinct in which they are not already in use and sets deadline dates for compliance. Subsection (5) substitutes, in lieu of the amount reimbursable under subsection (3), the flat sum of $50 per precinct in which voting machines are used, and subsection (6) provides that there shall be no reimbursement under subsections (3) or (5) to any county "which fails to acquire voting machines in some manner prior to the time herein required."

It is contended that the classification of counties, for purposes of the state's contribution to their election expenses, according to whether they have voting machines is discriminatory and in violation of Const. §§ 59 and 60.

What the legislature does is in the region of political administration and, presumably, expresses the public will. "The legislature in determining what shall be done, what is reasonable to do, does not divide its duty with the judges, nor must it conform to their conception of what is prudent or reasonable legislation. The judicial function is merely that of fixing the outside border of reasonable legislative action, the boundary beyond which the taxing power, the power of eminent domain, police power, and legislative power in general,

cannot go without violating the prohibitions of the constitution or crossing the lines of its grants." Thayer, "The Origin and Scope of the American Doctrine of Constitutional Law," 7 Harv.L.Rev. 129, 148. Under this theory a court must judge legislation in much the same manner as it reviews the verdict of a properly instructed jury, and set it aside only if the case is clear. Id. We cannot say it is clear that the classification here in question, considering its particular purpose, is not based on a reasonable and natural difference. Cf. Shannon v. Wheeler, 1937, 268 Ky. 25, 103 S.W.2d 718, 722.

■ A more serious question of discrimination would be presented if subsection (6) were construed literally so as forever to prohibit expense payments to a county that has failed to meet the deadline. However, this is but an example of the haphazard draftsmanship evident throughout the legislation in question, and we do not construe KRS 118.450(6) as meaning that a county may not become eligible upon compliance, even though it be subsequent to the deadline applicable under KRS 118.450(4).

The most controversial part of H.B. 275 is subsection (7), which reads as follows:

"The proposed budget of any county shall be disapproved by the State Local Finance Officer if such budget fails to provide for the payment of rentals in connection with any outstanding voting machine revenue bonds issued for the benefit of the county by the State Property and Buildings Commission as authorized by statute; payments to any county under the provisions of subsection 6 [sic] of this section shall be terminated if and whenever it shall fail to renew a lease (contract, lease and option) with the State Property and Buildings Commission executed in connection with the acquisition of voting machines by such commission for the use of such county; and such payments to any county shall be terminated whenever such county shall fail to pay any part of the rentals required for any effective period of such lease."

■ The reference in KRS 118.450(7) to subsection (6) is, of course, an obvious inadvertence and must be taken to mean subsections (3) and (5) instead. See County Board of Education of Daviess County v. Fiscal Court of Daviess County, 1927, 221 Ky. 106, 298 S.W. 185, 186.

The trial court held subsection (7) entirely invalid because its content is not germane to the title ("An Act relating to elections") and because it violates Const. § 157. Paraphrasing it for the purpose of analysis, the subsection consists of three provisions, all of which apply only where a county has once entered into an arrangement with the State Property and Buildings Commission under which voting machine revenue bonds have been issued and are still outstanding, wholly or in part. They are:

(a) Failure of the county to provide in its budget for the payment of rentals for the machines will result in disapproval of the budget (see KRS 68.210 to 68.370), regardless of whether the county has renewed its year to year lease contract with the Commission.

(b) Failure to renew the lease contract terminates the county's eligibility for the expense allowance under KRS 118.450(3) and (5).

(c) Failure to pay any part of the rentals due under the terms of the lease while it is in effect terminates the county's eligibility for the expense allowance.

■ We agree with the opinion of the chancellor that provision (a) offends § 157 of the Constitution. This obviates further consideration of whether it violates § 51 as well.

■ KRS 68.210 to 68.370 mandatorily provide a uniform county budget system, under which each county must submit its proposed annual budget to the State Local Finance Officer for approval. Though it is not made clear, and we find it unnecessary to decide, just what consequences may attend the operation of a county's fiscal af-

fairs under a budget that has not been so approved, certainly the legislature did not intend such approval or disapproval to be a vain and empty gesture. To the extent, then, that the requirement has significance it is part of an "unavoidable function of government," and it was held in Curlin v. Wetherby, Ky.1955, 275 S.W.2d 934, that an obligation from which the state cannot disengage itself without abandoning an unavoidable function of government is a "debt" in violation of Const. §§ 49, 50. The same principle applies to counties under Const. § 157.

KRS 160.470(1) contains a similar requirement, enacted in 1956, for departmental disapproval of a school board budget if it does not provide for payment of rentals in connection with an outstanding school revenue bond issue. However, its validity has not been tested in this court, and its mere enactment is neither authoritative nor greatly persuasive as a precedent.

Provisions (b) and (c) as paraphrased above deal with the expense allowance and thus are equally germane to the title as subsections (3) and (5), which create the allowance. And, under the principle of judicial review hereinbefore mentioned, that a county has once entered into an arrangement involving the issuance of bonds, even though it may have withdrawn, constitutes a valid basis for classification for purposes of the expense allowance while the bond issue remains extant. These provisions therefore are valid and, though divided from provision (a) only by a semicolon, are not inseparably connected with or dependent upon that provision, hence not affected by its invalidity. KRS 446.090.

One last point and we are done. The taxpayer's complaint alleges, and the answer admits, that KRS 118.450(4) and (5), requiring the acquisition of voting machines and providing for the expense allowance of $50 per precinct in all counties where they are used, commit the General Assembly to keep them in force so long as any of the bonds are outstanding. The trial court rightly adjudged this proposition to be incorrect.

The judgment is affirmed except to the extent that it declares invalid that portion of subsection (7), KRS 118.450, following the first semicolon. In the latter respect it is reversed with directions for appropriate modification.