473 P.2d 644

**CITY OF POCATELLO, a municipal corporation of the State of Idaho, Plaintiff-Respondent,**

v.

**George H. PETERSON and Dean G. Nielson, d/b/a a joint venture, Defendants-Appellants.**

No. 10646.

Supreme Court of Idaho.

Aug. 7, 1970.

Racine, Huntley, Herzog & Olson, Pocatello, for defendants-appellants.

Johnson and Olson, Pocatello, for plaintiff-respondent.

Robert M. Robson, Atty. Gen., and Richard H. Greener, Asst. Atty. Gen., Boise, amici curiae.

Seward H. French, Pros. Atty., Bonneville County, Idaho Falls, amicus curiae.

Ellison M. Matthews, Pros. Atty., Ada County, Boise, amicus curiae.

DONALDSON, Justice.

This action was initiated by the City of Pocatello, plaintiff-respondent, for the pur

pose of seeking a declaratory judgment as to the validity of a lease agreement proposed by the city, but rejected by George H. Peterson and Dean G. Nielson, the defendants-appellants. The appellants rejected the lease agreement since they had a question as to its legality. The parties stipulated that the cause be submitted to the district court for decision upon the pleadings and exhibits attached thereto, and further stipulated:

"That all of the allegations of Plaintiff's Complaint and Defendants' Answer are true and correct and that it is stipulated and agreed that the reasonable rental value of the subject facility is the sum of $6,000.00 per month."

The facts set forth by the pleadings, the exhibits, and stipulation disclose that on September 12, 1969, the Pocatello City Council enacted an ordinance declaring its intention to sell certain described unimproved lands owned by it. These lands were part of the Pocatello Municipal Airport and were situated near the runways of the airport. At this same time the city published a notice calling for competitive bids in accordance with certain contract documents. In calling for bids the city proposed that the successful bidder would purchase the unimproved land and construct an airport terminal building thereon in accordance with the specifications and requirements of the bid documents, and there-

after lease the completed structure on the purchased land back to the city. The structure to be built was to be used as an airport terminal facility to accommodate airlines serving the community, travelers on the airlines, and in addition to provide space for the Federal Aeronautics Administration, the Weather Bureau, and other related facilities.

Appellants Peterson and Nielson, doing business as joint·venturers, submitted both a bid for the purchase of the property and a proposal to construct the terminal building and to ·lease it back to the city. In substance the proposed lease provided that the lessor was to construct a building on the property deeded by the city to them, construction to be in accordance with the plans and specifications which were a part of the bid documents and for the city to pay a rental of $6,000 per month for a twenty year period.

On December 8, 1969, the overall bid of the appellants was accepted by the respondent city as the lowest and best bid. On February 9, 1970, the city tendered to the appellants a lease agreement for execution but the appellants refused to sign it since they were uncertain whether the city could constitutionally enter into such an agreement. The city then initiated this action seeking a declaratory judgment to determine whether the lease agreement violates the provisions of the Idaho Const., Article 8, § 3.[1]

---

1. *"Limitations on county and municipal indebtedness.*—No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, no [nor] unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty years from the time of contracting the

same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state and provided further that any city or village may own, purchase, construct, extend, equip, within and without the corporate limits of such city or village, water systems and sewage collection systems, and water treatment plants and sewage treatment plants, and off street parking facilities, public recreation facilities, and air navigation facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two-thirds of the qualified electors voting at an election to be held for that

The trial court, basing its conclusions of law on the stipulated record, ruled that the agreement was a lease and not a conditional sales contract and that the rentals provided in the agreement are not a debt or liability prohibited by Article 8, § 3 of the Idaho Constitution. The court also concluded that the lease agreement creates an ordinary and necessary expense authorized by the laws of this state and that execution of such an agreement is within the authority of the city and not prohibited by the constitution. The court furthermore concluded that the defendants could lawfully execute such an agreement and, accordingly, entered judgment for the city. It is from that judgment that this appeal has been taken.

Amicus curiae representing Bonneville County contends that the drafters of the Idaho Constitution intended that expenses authorized by the general laws of the state for units of local government to incur are the ordinary and necessary expenses to be excluded from the limitations of the constitutional provision. The attorney general as amicus curiae has adopted the brief and position of respondent (City of Pocatello).

At the outset it is to be pointed out that there is no issue before this Court as to whether there was a compliance with the provisions of I.C. Chapter 40, Title 31, as discussed in Swensen v. Buildings, Inc., 93 Idaho 466, 463 P.2d 932 (1970).

■ The principal issue presented by this appeal is whether the repair and improvement of the municipal airport by the City of Pocatello is an ordinary and necessary expense falling within the pertinent constitutional provision.[2] This Court emphasizes that it is meaningless to consider the broad question as to whether the repair, maintenance or construction of an airport is to be considered an ordinary and necessary expense without also taking into account the contextual framework peculiar to the City of Pocatello. In other words, whereas an airport may be considered an ordinary and necessary expense for some municipalities, it may not be for others. The repair, maintenance and construction of airports are not inherently "ordinary and necessary expenses" falling within the "proviso clause" of Article 8, § 3 of the Idaho Constitution.[3] Research fails to disclose cases which have considered the question except for several in North Carolina.[4] However these cases,[5] without analyzing

purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such systems, plants, and facilities as may be prescribed by law; and provided further that any port district, for the purpose of carrying into effect all or any of the powers now or hereafter granted to port districts by the laws of this state, may contract indebtedness and issue revenue bonds evidencing such indebtedness, without the necessity of the voters of the port district authorizing the same, such revenue bonds to be payable solely from all or such part of the revenues of the port district derived from any source whatsoever excepting only those revenues derived from ad valorem taxes, as the port commission thereof may determine, and such revenue bonds not to be in any manner or to any extent a general obligation of the port district issuing the same, nor a charge upon the ad valorem tax revenue of such port district."

2. The "proviso clause," Article 8, § 3, Idaho Constitution, states: " * * * provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state * * *." See F.N. 1 for the complete text of Article 8, § 3.

3. See F.N. 2.

4. Goswick v. City of Durham, 211 N.C. 687, 191 S.E. 728 (1937); Sing v. City of Charlotte, 213 N.C. 60, 195 S.E. 271 (1938); Greensboro-Highpoint Airport Authority v. Johnson, 226 N.C. 1, 36 S.E.2d 803 (1946); Vance County v. Royster, 271 N.C. 53, 155 S.E.2d 790 (1967).

5. The cases of Goswick v. City of Durham, supra, n. 4, and Greensboro-Highpoint Airport Authority v. Johnson, supra, n. 4, did not raise the question of constitutional prohibition.

the factual backgrounds therein· involved, merely state in the *abstract* that:

"* * * this Court has determined that the construction of a public airport is not a 'necessary expense' in that sense. Greensboro-High Point Airport Authority v. Johnson, supra; Sing v. City of Charlotte, supra." Vance County v. Royster, *supra*, 271 N.C. at 64, 155 S.E.2d at 798.

" ' "If the purpose is the maintenance of the public peace or the administration of justice, if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the state's delegated sovereignty, if, in brief, it involves a necessary governmental expense." '

When thus tested, an airport is not a necessary governmental expense." Sing v. City of Charlotte, *supra*, n. 4, 213 N.C. at 64, 195 S.E. at 273.

Thus these cases are of little help to this Court in considering the Idaho constitutional proviso as it relates to the facts of this case.

By I.C. § 50-321 [6] the legislature in broad· terms has authorized cities to acquire, operate and maintain airports. Additional legislative authority is to be found in I.C. § 21-401. [7]

It is fundamental, however, that insofar as the position of amicus curiae representing Bonneville County is concerned, statutes enacted by the legislature in this context cannot contravene constitutional limitations. In other words, even though the legislature may have authorized various expenditures by counties or cities and villages, if such expenditures are contrary to the constitutional provision, they cannot be made. The proviso to Article 8, § 3 requires both that the expenditure be authorized by the general laws of the state and that it be an ordinary and necessary one. The mere fact that the lease here is authorized by the general laws of the state does not ipso facto bring the expenditure within the proviso as an ordinary and necessary expense.

This Court will now consider whether the operation of an airport can be considered as an "ordinary and necessary" expense within the constitutional provision. As stated previously, few cases have been passed upon by the courts involving. the precise issue presented by the instant case. However in an analogous situation, courts have on frequent occasion determined whether the operation of an airport is of such public use or necessity that the state

---

6. "*50-321. Aviation facilities—Acquisition, operation and maintenance.*—Cities are hereby empowered: to acquire by purchase, gift, lease, sublease, or otherwise hold and take over such lands as the city council may deem necessary within or without the corporate limits whether within or without the county in which said city is located; do all things necessary in cooperation with the United States government in adapting any such lands so acquired to national defense purposes; and for the purpose of maintaining aviation facilities, to lease for aviation purposes, or any purposes connected therewith and incident thereto, all or any part of such land or lands, under such regulations and upon such terms and conditions as shall be established by the city council or otherwise established by law; to construct, operate and maintain, consistent with such regulations as may now exist or may hereafter be established by law, hangars, buildings and equipment necessary or convenient to the maintenance and operation of aviation facilities; to

survey, plat, map, grade, ornament and otherwise improve such land, appurtenances, approaches, and avenues leading to or adjacent thereto; to provide for all costs and expenses incident or necessary to the exercise of the foregoing powers or the attainment of the foregoing objects out of the general fund of said city or in its discretion by special levy, in an amount not to exceed three (3) mills on the dollar in any one (1) year on all the taxable property within such city or by the issuance of bonds as provided by sections 50-1001 through 50-1042."

7. I.C. § 21-401 provides in part: "Counties * * * cities and villages are hereby authorized to acquire by purchase, lease, condemnation, or otherwise, take over and hold lands * * * for the purpose of constructing and maintaining aviation fields, airports, hangars and other air navigation facilities; to provide equipment necessary or incidental to the maintenance and operation of such aviation fields or airports; * * *."

or its subdivisions can use the power of eminent domain to condemn land for airports.

"Eminent domain is the power of the sovereign to take property for public use without the owner's consent * * *. The 'public use' element is set forth in some definitions as the *'general welfare,'* the *'welfare of the public,'* the *'public good,'* the *'public benefit,'* or *'public utility or necessity.'*" 1 Nichols on Eminent Domain, § 1.11, pp. 4–6, Rev. 3d ed. 1964. (emphasis supplied).

The construction, maintenance, and operation of airports is generally considered to be for a *public use* justifying the exercise of the power of eminent domain for the purpose of acquiring private property for such use. See, City of Caldwell v. Roark, 92 Idaho 99, 437 P.2d 615 (1968); Ferguson v. City of Kenosha, 5 Wis.2d 556, 93 N.W.2d 460 (1958); 8 Am.Jur.2d Aviation, § 47, p. 667; Annot. 135 A.L.R. 756. As heretofore stated, in the State of Idaho, pursuant to I.C. § 21–401,[8] cities are permitted to acquire, via the power of eminent domain, lands for the construction and maintenance of airports.

■ ■■ Thus the construction and maintenance of an airport facility is a valid justification for employing the power of eminent domain since airports are constructed and operated for the public benefit, utility and necessity. Examining the factual situation presented by the case at bar, it appears that the City of Pocatello has operated a municipal airport since 1947, but presently finds that the airport must be expanded if it is to remain of any value. The passenger terminal is an unsound structure. The observation room, technician's shop, teletype room, weather bureau, office space and storage areas are all inadequate to accommodate the needs of the people. Furthermore the facility is inadequate to accommodate the needs of the Federal Aviation Agency. In view of these facts, were the expenditures by the City of Pocatello "ordinary and necessary expenses"? "Ordinary" means "regular; usual; normal; common; often recurring; * * * not characterized by peculiar or unusual circumstances." Black's Law Dictionary, p. 1249, (Rev. 4 ed. 1968).[9] "Necessary" means "indispensible." Black's Law Dictionary, p. 1181 (Rev. 4 ed. 1968). An expenditure, although not of a frequently recurring nature, may nonetheless be "ordinary and necessary." Hickey v. City of Nampa, 22 Idaho 41, 124 P. 280 (1912). Since the aviation industry has experienced tremendous growth during the last two decades, the original airport facilities at Pocatello, dating from 1947, have become obsolete and have ceased to provide the necessary safety demanded by air travelers. Insuring the safety of air travel is undoubtedly a legitimate, necessary, and ordinary function to be performed by a municipality. Where the city has maintained an airport facility for the benefit of the traveling public for more than twenty years and now finds it inadequate to serve the public, it is the opinion of this Court that the trial court correctly concluded that rentals on a new facility designed to fulfill the needs of the city and of the traveling public are "ordinary and necessary" expenses within the proviso clause of Article 8, § 3 [10] of the Idaho Constitution.

Closely analogous to the instant case is the situation presented by Hickey v. City of

8. See F.N. 7.

9. This Court stated in Thomas v. Glindeman, 33 Idaho 394, 195 P. 92 (1921), that:

"An expense is ordinary if in the ordinary course of the transaction of municipal business, or the maintenance of municipal property, it may be and is likely to become necessary." Thomas v. Glindeman, *supra*, 33 Idaho at 398, 195 P. at 93.

See also, Hanson v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634 (1968); Jones v. Power County, 27 Idaho 656, 150 P. 35 (1915).

10. See F.N. 2.

Nampa, *supra,* wherein the Supreme Court reasoned that:

"* * * an expenditure, though out of the ordinary, which is incurred for the purpose of repairing * * * city property, or improving it in such manner as to render it serviceable to the city, falls within this proviso [Article 8, § 3] to the Constitution. * * * It is one of the incidents of the ownership of property that it must be kept in repair * * * if the property is to be useful and serve its purpose. The making of repairs may, however, only occur at infrequent intervals, and still be an ordinary and necessary expense." Hickey v. City of Nampa, *supra,* 22 Idaho at 45, 46, 124 P. at 281.

In *Hickey,* wooden pipes in the city's wooden water system had become obsolete and of no value to the City of Nampa (they burst and became useless). In the case at bar the Pocatello Airport is an obsolete facility, inadequate and unsafe for the citizens of the area. In *Hickey,* iron pipes were purchased by the City of Nampa to replace the obsolete wooden ones. The Supreme Court was of the opinion that the repair and improvement of the property was a necessary and ordinary expense since "In order for this property to be of any value to the city, it was necessary for it to be kept in repair." Hickey v. City of Nampa, *supra,* 22 Idaho at 45, 124 P. at 281.

It is the opinion of this Court that the funds to be expended by the City of Pocatello for the repair and improvement of its airport facility are "ordinary and necessary expenses" incurred by the municipality, falling within the proviso to Article 8, § 3 of the Idaho Constitution.[11] Furthermore the repair and improvement of the Pocatello airport facility is essential ·for the proper growth and development of the area. This is especially so since the railroads, upon which public travel and communication were heavily dependent in yesteryear, are discontinuing passenger service to many cities. The following statement made by Justice Cardozo in 1928 is even more pertinent today:

"Aviation is to-day an established method of transportation. * * * The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition." Hesse v. Rath et al., 249 N.Y. 436 at 438, 164 N.E. 342 at 342 (1928).

Judgment affirmed. Costs to respondent.

McQUADE and SHEPARD, JJ., concur.

McFADDEN, Chief Justice (dissenting).

The majority opinion deals solely with the issue as to what constitutes "ordinary" and necessary expenses" within the proviso clause of Idaho Const. art. 8, § 3. It concludes that "the funds to be expended by the City of Pocatello for the repair and improvement of its airport facility are 'ordinary and necessary expenses' incurred by the municipality, falling within the proviso to Article 8, § 3 of the Idaho Constitution. Furthermore the repair and improvement of the Pocatello airport facility is essential for the proper growth and development of the area."

At the outset it is to be noted that the issue here is whether the rental payments of $6,000 per month for twenty years violate the constitutional provision, and not whether "the repair and improvement of the airport facility were 'ordinary and necessary expenses' incurred by the municipality" fall within the proviso clause of the constitutional provision. This case does not deal with *"repair and improvement"* of existing facilities, but does deal with *rental payments* for a wholly new terminal building.

Inasmuch as I disagree with the conclusion reached by the majority opinion, an additional issue must be discussed. This additional issue, which I will first discuss, is whether the rental payments provided in the twenty-year lease before this court

11. See F.N. 2.

create a "debt or liability" within the prohibition of Idaho Const. art. 8 § 3.

Respondent, citing the cases set out in the footnote (1) below, contends that the plan whereby the city sells the land to appellants who construct the airport terminal facility and lease it back to the city is one that has generally been accepted in other jurisdictions. Throughout these cases runs the thought that where the lease is in fact a lease and the rentals are intended as rentals, rather than as a subterfuge for installment payments on the purchase price under a conditional sales contract, the lease, even if it contains an option to purchase the property, does not create an *indebtedness* within the meaning of a constitutional limitation on indebtedness.[1] See 71 A.L.R. 1318 at 1321; 145 A.L.R. 1364; 15 McQuillin, Municipal Corporations § 41.38, pp. 392–393 (3d ed.). The reasoning used to support this result is that a lease calling for periodic rentals does not create any indebtedness for the aggregate of future rentals, but rather only creates indebtedness for the installment of rent currently owing, because rent is not a current obligation until it has accrued under the terms of the lease. See City of Los Angeles v. Offner, 19 Cal.2d 483, 122 P.2d 14 (1942); Heberer v. Board of Com'rs of Chaffee County, 88 Colo. 159, 293 P. 349 (1930); Bair v. Layton City Corp., 6 Utah 2d 138, 307 P.2d 895 (1957); Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N.W. 635 (1937). But see Magnusson, "Lease Financing by Municipal Corporations as a Way Around Debt Limitations," 25 Geo.Wash.L.Rev. 377 (1957) at 391 where it is stated that

"The duty to pay future rent in a long term lease is just as 'present' as the duty to pay each installment of debt service on the bonds back of the rent. The lease could not be terminated without the payment of damages or without being subject to injunction or mandamus to keep on paying. Breaches of agreements or failure to perform would be subject to having a trustee take possession and carry out the required performance."

Although the mere fact that a lease contains an option to purchase the property upon expiration of the lease will not inevitably transform the lease into a conditional sales agreement, where the option

1. McArthur v. Smallwood, 225 Ark. 328, 281 S.W.2d 428 (1955); Dean v. Kuchel, 35 Cal.2d 444, 218 P.2d 521 (1950); Los Angeles County v. Byram, 36 Cal. 2d 694, 227 P.2d 4 (1951); City of La Habra v. Pellerin, 216 Cal.App.2d 99, 30 Cal.Rptr. 752 (1963); City of Los Angeles v. Offner, 122 P.2d 14, 145 A.L.R. 1358 (Cal.1942); Ruane v. City of San Diego, 267 Cal.App.2d 548, 73 Cal.Rptr. 316 (1968); County of Los Angeles v. Nesvig, 231 Cal.App.2d 603, 41 Cal.Rptr. 918 (1965); Heberer v. Board of County Commissioners of Chaffee County, 88 Colo. 159, 293 P. 349 (1930); Sheffield v. State School Bldg. Auth., 208 Ga. 575, 68 S.E.2d 590 (1952); Berger v. Howlett, 25 Ill.2d 128, 182 N.E.2d 673 (1962); Loomis v. Keehn, 400 Ill. 337, 80 N.E. 2d 368 (1948); Jefferson School Tp. v. Jefferson Tp. School Bldg. Co., 212 Ind. 542, 10 N.E.2d 608 (1937); Protsman v. Jefferson-Craig Consolidated School Corp. of Switzerland County, 109 N.E.2d 889 (Ind.1953); Book v. State Office Building Comm., 238 Ind. 120, 149 N.E.2d 273 (1958); State ex rel. Fatzer v. Armory Bd., 174 Kan. 369, 256 P.2d 143 (1953); Fiscal Court of Jackson County v. Board of Education, 268 Ky. 336, 104 S.W.2d 1103 (1937), aff. 269 Ky. 258, 106 S.W.2d 990, cf: State Property & Bldg. Comm. v. Hays, 346 S.W.2d 3 (Ky.1961); Hall v. City of Baltimore, 252 Md. 416, 250 A.2d 233 (1969); Walinske v. Detroit-Wayne Joint Bldg. Auth., 39 N.W.2d 73 (1949); People v. Doyle and Associates, Inc., 374 Mich. 222, 132 N.W.2d 99 (1965); Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N.W. 635, 112 A.L.R. 269 (1937); Petition of Bd. of Public Bldgs. v. Crowe, 363 S.W.2d 598 (Mo.1962); 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 193 A.2d 115 (1963); Application of Okl. Capitol Imp. Auth., 355 P.2d 1028 (Okl. 1960); Kelley v. Earle, 325 Pa. 337, 190 A. 140 (1937); Greenhalgh v. Woolworth, 361 Pa. 543, 64 A.2d 659 (1949); Bair v. Layton City Corp., 6 Utah 2d 138, 307 P.2d 895 (1957); State ex rel. Thomson v. Giessel, 267 Wis. 331, 65 N.W.2d 529 (1954); State ex rel. Thomson v. Giessel, 271 Wis. 15, 72 N.W.2d 577 (1955)).

purchase price decreases with the rentals paid, or where the rentals are sufficient to cover the purchase price so that at the termination of the lease the city acquires the property without any additional payment,[2] or payment of only a nominal sum, the authorities indicate that the lease does create an indebtedness for the aggregate amount of the rentals. See 71 A.L.R. 1318, at p. 1323; 145 A.L.R. 1362 at p. 1374; Brewster v. Deschutes County, 137 Or. 100, 1 P.2d 607 (1931); Iron Products Invest. Co. v. City of Picher, 83 F.2d 443 (10th Cir. 1936); City of Phoenix v. Phoenix Civic Auditorium and Convention Center Ass'n, 99 Ariz. 270, 408 P.2d 818 (1965). See also Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931).

Examination of the constitutions of those states from which opinions are cited by respondent (supra 1) reveals that their constitutions do not contain a phrase "shall incur any *indebtedness, or liability*" (emphasis added) as used in Idaho Const. art. 8, § 3. Rather, most of those constitutions only prohibit governmental bodies from incurring "debts" or "indebtedness."[3] Only the California, Missouri and New Jersey constitutions contain the word "liability."[4] The New Jersey prohibition is applicable only against the state and does not mention counties or municipalities.

It is also noteworthy that Los Angeles County v. Byram, 36 Cal.2d 694, 227 P.2d 4 (1951), cited by respondent as sustaining a lease arrangement as not in violation of the constitutional debt limitation, dealt with a case in which the city was under a manda-tory statutory duty to provide a court building, and for that reason the court held that the cost of leasing such a building was not within the constitutional prohibition against incurring a debt or liability.

The Missouri constitution originally contained a reference to both "debt" and "liability," but was later amended to delete the reference to "debt," leaving only the word "liability." The Missouri case cited by respondent, Petition of Bd. of Public Bldgs. v. Crowe, 363 S.W.2d 598 (Mo.1962), discussed in detail the difference between "debt" and "liability" and upheld a revenue bond issue. The factual situation in that case, however, was quite different from the case before this court.

The Minnesota case cited by respondent, Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N.W. 635 (1937), upholds a lease arrangement such as is involved here, stating that rent is not a "debt" or "liability," but it does not involve the interpretation of a constitutional debt limitation. That case dealt only with a debt limitation contained in a city charter.

This court has previously had occasion to consider the use of the terms "indebtedness" and "liability" in Idaho Const. art. 8, § 3. Williams v. City of Emmett, supra, dealt with an agreement under which the city had the use of street sprinklers for which it contracted to make annual payments. The agreement gave the city an option to purchase the equipment and provided that these payments, which in the aggregate amounted to approximately the option price, would be applied to the option

---

2. The language in the bid submitted by the appellants to the effect that "We, as citizens of Pocatello, feel it is in the best interests of the City of Pocatello to eventually regain ownership of the terminal. We submit as a part of this proposal that at the end of the twenty year lease term, we will deed the property and terminal building back to the City of Pocatello, at no cost as a gift," suggests that the "lease" involved here is more than a mere lease of the air terminal facility. See Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931). See Magnusson, "Lease Financing by Municipal Cor-porations As A Way Around Debt Limitations," 25 Geo.Wash.L.Rev. 377, 390 (1957).

3. Colo.Const. art. 11, § 6; Ga.Const. art. 7, § 7; Ill.Const. art. 9, § 12; Ind. Const. art. 13; Kan.Const. art. 11, §§ 6, 7; Ky.Const. §§ 157–158; Md.Const. art. 11, § 7; Mich.Const. art. 7, § 11; Okla. Const. art. 10, § 23; Pa.Const. art. 9, §§ 9, 10, P.S.; Utah Const. art. 14, § 3; Wis.Const. art. 14, § 3.

4. Calif.Const. art 16, § 1; Mo.Const. art. 3, § 37; N.J.Const. art. 8, § 3.

price. Recognizing that numerous other states had held that a lease of property did not create a present indebtedness for the aggregate amount of the rentals, this court held that while there may have been no present indebtedness within the meaning of the constitution, there was a *liability* for the aggregate payment and that the agreement therefore violated the constitutional provision. The court thus gave a broader definition to the term "liability" than to "indebtedness."

In Boise Development Co., Ltd. v. Boise City, 26 Idaho 347, 143 P. 531 (1914), this court first considered the distinction between "indebtedness" and "liability" as used in our constitution. In that case the city had agreed, in consideration of agreements from the Boise Development Company for the use of the land, to expend at least $5,000 annually for five years to improve the channel of the Boise River. This court considered art. 8, § 3, of the Idaho Constitution and held that although there was not a *"present indebtedness"* created by the agreement, there was a "present liability" for the total expenditures over the five year period. In reaching this conclusion the court discussed a California case indistinguishable in principle from the case at bar. McBean v. City of Fresno, 112 Cal. 159, 44 P. 358 (1896), involved a contract between the city and McBean under which McBean agreed to dispose of the city's sewage for five years for $4,900 per year. The California court upheld the contract on the grounds that only the annual payment of $4,900 was a present debt or liability. This court, however, severely criticized that holding, stating that although there was not a present debt for the aggregate payments, there was a present liability for them. This court set forth a hypothetical case and stated:

"If A. by a valid contract employs B. to work for him for the term of one year at $50 per month, payable at the end of each and every month, would this contract not be a liability on A. as soon as executed? A debt of $50 would accrue thereon at the end of each month, but

the liability would be incurred at the time the contract was entered into." 26 Idaho at 363, 143 P. at 535.

Although the discussion of McBean v. City of Fresno, supra, was dictum, it is in accord with the statements later made in 1931 by this court in Williams v. City of Emmett, supra, in which this court stated:

"Judge Dietrich, in Dexter Horton T. & Sav. Bank v. Clearwater County (D.C.) 235 F. 743, 754, in discussing this provision of the Constitution, said:

"'The Idaho Constitution is imbued with the spirit of economy, and in so far as possible it imposes upon the political subdivisions of the state a pay-as-you-go system of finance. The rule is that, without the express assent of the qualified electors, municipal officers are not to incur debts for which they have not the funds to pay. Such policy entails a measure of crudity and inefficiency in local government, but doubtless the men who drafted the Constitution, having in mind disastrous examples of optimism and extravagance on the part of public officials, thought best to sacrifice a measure of efficiency for a degree of safety. The careful, thrifty citizen sometimes gets along with a crude instrumentality until he is able to purchase and pay for something better. And likewise, under the Constitution, county officers must use the means they have for making fair and equitable assessments until they are able to pay for something more efficient, or obtain the consent of those in whose interests they are supposed to act.'" 51 Idaho at 505, 6 P.2d at 476.

See also Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643 (1912); School Dist. No. 8 v. Twin Falls County Mut. Fire Ins. Co., 30 Idaho 400, 164 P. 1174 (1917). Regardless of whether this lease agreement created an indebtedness for the aggregate rentals, it is evident that upon execution of the agreement there was created within the meaning of the Idaho constitution a "liability" for the aggregate rentals to become due.

This court is conversant with the many decisions from other jurisdictions which have upheld long term leases of courthouses, jails and other buildings on the theory that only current rent as opposed to the aggregate or future rents is a present debt or liability. See City of Los Angeles v. Offner, 19 Cal.2d 483, 122 P.2d 14 (1942); Heberer v. Board of Com'rs of Chaffee County, 88 Colo. 159, 293 P. 349 (1930); Bair v. Layton City Corp., 6 Utah 2d 138, 307 P.2d 895 (1957); Ambrozich v. City of Eveleth, 200 Minn. 473, 274 N.W. 635 (1937); Hall v. City of Baltimore, 252 Md. 416, 250 A.2d 233 (1969). However, as previously pointed out, the constitutional provisions under which those cases were decided in many instances differ from the Idaho constitution. It is my conclusion that a "liability" as opposed to a "debt" was created on the part of the city upon execution of this agreement.

The next issue for consideration is the one which is the rationale of the majority opinion which accepts the contention of both parties, as well as amicus curiae, that the expenditures in this case are to be considered "ordinary and necessary expenses" within the meaning of the constitutional proviso which states:

"provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." Idaho Const. art. 8, § 3.

Counsel cite in support of this contention Thomas v. Glindeman, 33 Idaho 394, 195 P. 92 (1921), and Hanson v. City of Idaho Falls, 92 Idaho 512, 446 P.2d 634 (1968).

Thomas v. Glindeman, supra, was an application to this court for a writ of mandate to compel the mayor of Coeur d'Alene to sign a city warrant in payment of a claim authorized by the counsel for work done on the city streets. The claim had not been paid because funds previously appropriated had been expended. A petition signed by a majority of the legal voters of the city requesting an additional appropriation to be made had been filed. The

issue before the court involved the provisions of C.S.1919, § 4053 (I.C. § 50–1003) which provided in part:

"No further appropriation shall be made at any other time within such fiscal year unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them or at a general election duly called therefor, and all appropriations shall end with the fiscal year for which they were made."

Thomas v. Glindeman, supra, in my opinion, limited as it was to the issues there, is hardly to be considered authoritative for the position taken by counsel.

In Hanson v. City of Idaho Falls, supra, this court held that future payments to be made under a policeman's retirement fund, while a liability, were ordinary and necessary expenses of city government. Therein it is stated:

" 'An expense is ordinary if in the ordinary course of municipal business, or the maintenance of municipal property, it may be and is likely to become necessary.' Thomas v. Glindeman, 33 Idaho 394, 195 P. 92 (1921). One of the most fundamental and necessary expenses of municipal government is that which is incurred in the provision of adequate police protection for persons and property." 92 Idaho at 514, 446 P.2d at 446.

The words "ordinary and necessary" as used in their constitutional context have been considered by this court in several other cases. In Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931), this court held that payments by the city on an agreement to acquire use of and title to a street sprinkler were not ordinary or necessary expenses. In Dunbar v. Board of Com'rs, 5 Idaho 407, 49 P. 409 (1897), this court held that building of a bridge and the payment of scalp bounties were not within the contemplation of those terms. Therein this court stated:

"It will be seen that the two terms are used conjunctively; hence, to come with-

in the constitutional proviso or exception, expenditures made in excess of the revenues of any current year must not only be for ordinary expenses, such as are usual to the maintenance of the county government, the conduct of its necessary business, and the protection of its property, but there must exist a necessity for making the expenditure at or during such year." 5 Idaho at 412, 49 P. at 411.

Bannock County v. C. Bunting & Co., 4 Idaho 156, 37 P. 277 (1894), in construing Revised Statutes § 1762 (dealing with construction of public buildings or improvements) held that the purchase and building of a county courthouse "is clearly not among the ordinary and necessary expenses of the county." Allen v. Doumecq Highway Dist., 33 Idaho 249, 192 P. 662 (1920), held that construction of a bridge was not an ordinary and necessary expense.

Cases decided by this court recognizing expenditures to be "ordinary and necessary expenses" are: Butler v. City of Lewiston, 11 Idaho 393, 83 P. 234 (1905)—validity of bond issue to redeem city warrants issued for salaries of city officials and employees, the bond issue having passed by a two-thirds majority; Hickey v. City of Nampa, 22 Idaho 41, 124 P. 280 (1912), which approved a bond issue passed to retire warrants used to pay for reconstruction of a water main which collapsed while firemen were fighting a fire; Jones v. Power County, 27 Idaho 656, 150 P. 35 (1915), which held transcribing of county records, providing furniture fixtures, record books and erecting a jail for a newly created county were ordinary and necessary expenses within the constitutional proviso, and such items could be contracted for without submitting the issue to the vote of the people.

It is to be noted, however, that this court held in the following cases that where expenditures, or liabilities exceed income for the current year, they are in violation of the constitution; Ball v. Bannock County, 5 Idaho 602, 51 P. 454 (1897), purchase of real estate for courthouse; McNutt v. Lemhi County, 12 Idaho 63, 84 P. 1054 (1906), building of courthouse, bridge or wagon road; School Dist. No. 8 v. Twin Falls County Mutual Fire Ins. Co., 30 Idaho 400, 164 P. 1174 (1917), membership in county mutual fire insurance company; Miller v. City of Buhl, 48 Idaho 668, 284 P. 843 (1930), purchase of electric system by pledge orders payable from sale of power; Feil v. City of Coeur d'Alene, 23 Idaho 32, 129 P. 643 (1912), purchase of water system, payable from bonds to be redeemed from receipts; Boise Development Co., Ltd. v. Boise City, 26 Idaho 347, 143 P. 531 (1914), payments for land; Mittry v. Bonneville County, 38 Idaho 306, 222 P. 292 (1923), excess expense above bonded limits in completion of courthouse; Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475 (1931), payments on sprinkler truck; General Hospital v. City of Grangeville, 69 Idaho 6, 201 P.2d 750, debt on hospital construction payable out of proceeds of operation of hospital. In none of these cases, however, did this court consider whether the expenditures could have been considered as "ordinary and necessary."

The majority opinion discards the reasoning of the North Carolina court in the cases of Goswick v. City of Durham, 211 N.C. 687, 191 S.E. 728 (1937); Sing v. City of Charlotte, 213 N.C. 60, 195 S.E. 271 (1938); Greensboro-Highpoint Airport Authority v. Johnson, 226 N.C. 1, 36 S.E.2d 803 (1946); Vance County v. Royster, 271 N.C. 53, 155 S.E.2d 790 (1967); in which series of cases that court held expenditures for municipal airport facilities were not "ordinary and necessary" expenses under that state's constitutional debt limitations. In Henderson v. City of Wilmington, 191 N.C. 269, 132 S.E. 25 (1926), the Supreme Court of North Carolina stated:

"The decisions heretofore rendered by the court make the test of a 'necessary expense' the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice, if it partakes of a governmental nature or

purports to be an exercise by the city of a portion of the state's delegated sovereignty, if in brief, it involves a necessary governmental expense—in these cases the expense required to effect the purpose is necessary * * *." 132 S.E. at 30–31.

The reasoning of the North Carolina court seems valid. An airport terminal facility is not such an integral part of governmental function that an expenditure for renting of a terminal facility is a "necessary" expense. There are a wide variety of facilities that are frequently supplied by city government, such as municipal libraries, auditoriums, golf courses, museums and many more. Yet it is difficult to say in precisely which instance an expenditure for such facilities would be "necessary."

"Ordinary" means "regular; usual; normal; common; often recurring; according to established order; settled; customary; reasonable; not characterized by peculiar or unusual circumstances; belonging to, exercised by, or characteristic of the normal or average individual." Black's Law Dictionary (rev. 4th ed. 1968). "Necessary" has a flexible meaning: "It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought." Black's Law Dictionary (rev. 4th ed. 1968).

In the proviso clause the two terms "ordinary and necessary" are used conjunctively in modifying the word "expenses." In the constitutional context with which they are used, only in exceptional circumstances can the expenditures of a city, town, etc., exceed the income or revenue

provided for in that year. Idaho Const. art. 8, § 3. When a city obligates itself to pay $1,440,000 at $6,000 per month for a twenty year term it is difficult to see how that is an "ordinary and necessary" expense. When the facility for which the rent is contracted to be paid has not yet been constructed, and where the impetus for the construction of such new facility originated from the city, more than ever am I convinced that this is an "extraordinary" expense, regardless of how necessary such facility might be. Particularly is this so in the instant case, inasmuch as the city of Pocatello held a general obligation bond election in 1968 for the purpose of the city construction of aviation facilities including a municipal airport terminal building (Bogert v. Kinzer, 93 Idaho 515, 465 P.2d 639 (1970)), which did not pass by the necessary majority.

The type of arrangement proposed by this case is an attempt to do indirectly what the constitutional prohibition proscribes—the creation of any "indebtedness, or liability, in any manner, or for any purpose exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose * * *." Idaho Const. art. 8, § 3.

Sympathetic as we may be for the problem facing the city and understanding the need the city council in its good faith desires to alleviate by this arrangement, yet the regular method of proceeding for acquisition of such a large and expensive facility should be followed.[5] The judgment of the trial court should be reversed.

SPEAR, J., concurs herein.

---

5. Since the time of the argument in this case the Supreme Court of the United States decided the case of City of Phoenix, Arizona, et al. v. Kolodziejski, 399 U.S.

204, 90 S.Ct. 1990, 26 L.Ed. 523, holding invalid property limitations on the right of electors to vote at general obligation bond elections.